**Louis R. PICCOLO and Nancy M. Piccolo, Appellants,**

**v.**

**DAIN, KALMAN & QUAIL, INC., Appellee.**

**No. 80–1911.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 19, 1981.

Decided Feb. 25, 1981.

Louis R. Piccolo, for appellants.

Knudsen, Berkheimer, Beam, Richardson & Endacott, Kenneth C. Stephan, Lincoln, Neb., Dorsey, Windhorst, Hannaford, Whitney & Halladay, Edward J. Pluimer, Minneapolis, Minn., for appellee Dain Bosworth Inc.

Before GIBSON, Senior Circuit Judge, and BRIGHT and HENLEY, Circuit Judges.

PER CURIAM.

Louis R. and Nancy M. Piccolo (the Piccolos) brought this action *pro se* in federal district court under the United States Arbitration Act, 9 U.S.C. §§ 1–14 (1976), to vacate an arbitration award favorable to Dain, Kalman & Quail, Inc. (DKQ). DKQ moved for a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The district court[1] referred the motion to a magistrate, who made findings and recommended to the court that the Piccolos' complaint be dismissed as untimely. The district court adopted the magistrate's findings and recommendations in their entirety and ordered dismissal of the complaint. On appeal, the Piccolos contend that their "due diligence" in seeking relief from the arbitration award and their good-faith reliance on alleged misrepresentations by various state and federal regulatory agencies on the proper method to challenge the award should excuse their noncompliance with the time limitations set forth in the Act. We reject these contentions and, therefore, affirm the district court's order.

## I. *Factual Background.*

Construing the Piccolos' allegations in the light most favorable to their cause of action, the magistrate found that, upon DKQ's recommendations, the Piccolos purchased stock in Real Estate Investment Trusts (REITS) during the first three quarters of 1974 when DKQ allegedly knew or should have known of the deteriorating financial status of REITS in the financial markets.[2]

Late in 1974, the Piccolos realized the mistake of these investments and sought advice from the Nebraska Department of Banking and Finance on how to proceed against DKQ for materially misrepresenting the investment value of REITS. The Department referred them to the National Association of Securities Dealers (NASD) and, as a result of the referral, the Piccolos agreed in July of 1978 to submit their claims against DKQ to binding arbitration.[3]

About two weeks before the scheduled arbitration hearing, the Piccolos learned from Richard Ryder, Director of Arbitration for NASD, that one member of the five-person arbitration panel had done and was still doing business with the same account executive of DKQ that had recommended the stocks to the Piccolos. When the Piccolos requested a replacement for that member of the panel, Ryder purportedly told the Piccolos that "it was too late to replace him and that if he was not accepted, the hearing could be postponed, perhaps, forever." Ryder also advised the Piccolos that he would need a letter accepting the presence of that arbitrator on the panel before the hearing could take place. The Piccolos wrote the letter, believing that

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

2. In their reply to DKQ's answer to the complaint, the Piccolos quoted from a number of publications on the declining financial condition of REITS throughout the period that DKQ had been recommending REITS as "safe and good" investments.
   a) *Wall Street Journal*, January 21, 1974 "REITS face Shake-out as Investments Sour, Cash Investments dry up"
   b) *Forbes*, March 15, 1974
   1) "When is a lemon a lemon"
   2) "I've been murdered in these REITS"
   c) *New York Times*
   1) "By March 1974 only 10 of 200 REITS making new loans"
   d) *New York Times*, July 5, 1974
   1) "REITS Suffer as Rates Soar"
   2) "For the first six months of this year, five of the ten stocks showing the biggest losses were REITS (New York Exchange)
   e) *New York Times*
   1) "N Y S E temporarily suspended trading June 20, 1974 on Chase Manhattan Mortgage Realty Trust"
   f) *Minneapolis Tribune*, July 27, 1979
   1) "I D S had been suffering severe losses since 1974"
   g) *Barrons*, July 22, 1974
   1) "There are presently throughout the real estate industry more foreclosed properties for sale than at any time since the Depression."

3. What transpired between late 1974 when the Piccolos first sought advice on how to proceed against DKQ and the July 1978 agreement to submit the claims to arbitration is unclear from the record before us.

they had no alternative in the matter. Just before the hearing, another member of the panel disclosed that he had been doing business with a manager of DKQ. The Piccolos also protested his presence on the panel, but the chairperson denied the Piccolos' request for replacement of both panel members.

The hearing took place on August 21, 1979, and on October 4, the panel delivered a unanimous award in favor of DKQ dismissing the Piccolos' charges of material misrepresentation.

For the next three months, the Piccolos sought review of the award through a course of correspondence with various private and governmental agencies. They first contacted Ryder, requesting "a new, fair, and impartial hearing." Ryder informed them that NASD had no authority to vacate arbitration awards and that they should consult legal counsel on the applicable state or federal law. The Piccolos also wrote to the Nebraska Department of Banking, which had initially referred them to NASD. The Department apparently referred them to the Denver regional office of the Securities and Exchange Commission (SEC), which advised them of those provisions of NASD's Code of Arbitration Procedure which describe the procedure for obtaining a rehearing before the arbitration panel. In accordance with that procedure, the Piccolos contacted the chairperson of the arbitration panel, who denied their request for a rehearing. Thereafter, the Piccolos again consulted the Denver office of the SEC, which informed them that the agency would forward the matter to its Washington, D. C., office with directions to

contact the Piccolos by January 11, 1980. On January 15, the Washington office advised them that the SEC lacked authority to vacate or modify the awards of arbitration panels appointed by NASD and that any challenges to those awards must be pursued in court.

Shortly thereafter, on January 21, 1980, the Piccolos filed this action requesting that the district court vacate the arbitration award on the ground that they did not "receive a fair and impartial hearing." [4] Service on DKQ occurred four days later, three months and twenty-one days after the filing of the arbitration award.

II. *Discussion.*

▄▄▄ Section 12 of the United States Arbitration Act requires that:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. [9 U.S.C. § 12 (1976).]

A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award. *See International Union, UAW v. LaCrosse Cooler Co.,* 406 F.Supp. 1213, 1215 (W.D.Wis.1976); *DeLorto v. United Parcel Service, Inc.,* 401 F.Supp. 408, 409 (D.Mass.1975); *Hill v. Aro Corp.,* 275 F.Supp. 482, 486–87 (N.D.Ohio 1967). Accordingly, the district court properly determined that the Piccolos' failure to serve their complaint within three months of the award deprived it of power to review the award.

---

4. Section 10 of the Federal Arbitration Act permits the federal district courts to vacate an arbitration

> award upon the application of any party to the arbitration—
>
> (a) Where the award was procured by corruption, fraud, or undue means.
>
> (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbe-

havior by which the rights of any party have been prejudiced.

> (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> (e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators. [9 U.S.C. § 10 (1976).]

The magistrate concluded over DKQ's objections that the Piccolos stated a cause of action under subparagraphs (b) and (c) of this section.

The Piccolos urge this court, however, to fashion a "due diligence" exception to the three-month limit. In *Holodnak v. Avco Corp.*, 381 F.Supp. 191 (D.Conn.1974), *rev'd in part on other grounds*, 514 F.2d 285 (2d Cir.), *cert. denied*, 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975), plaintiff filed his complaint in federal district court six days before the three-month period expired. When he learned that the marshal's office might not be able to serve the complaint promptly, plaintiff moved the court to allow service by some person specially appointed by the court. The court granted the motion, but service still did not occur until three months and one day after the arbitrator's award. In denying defendant's motion to dismiss the complaint for untimely service of process, the court excused plaintiff from compliance with 9 U.S.C. § 12 under the circumstances because of plaintiff's due diligence in securing a substitute means to perfect service within the time limit and the absence of any prejudice to defendants as a result of the one-day delay. *Id.* at 197.

Although the existence of a "due diligence" exception may be questioned,[5] the Piccolos' efforts to comply with section 12 would not qualify for this exception in any event. In contrast to the Piccolos' efforts at compliance, plaintiff in *Holodnak* filed his complaint within the three-month period, sought to obtain a substitute means of perfecting service within that period, and

even failing to obtain timely service through alternative means managed to come within one day of the prescribed time period.

More importantly, the Piccolos repeatedly disregarded admonitions to seek legal advice on the appropriate means to challenge an arbitration award. Ryder, for example, advised the Piccolos on October 25, 1979:

The Association is not authorized to void or vacate arbitration Awards. That is a matter for the courts and would be governed by applicable state or federal law. In order to be fully informed as to your legal rights at this point, you should consult legal counsel for advice.

Similarly, the SEC regional administrator wrote the Piccolos on December 6, 1979:

The Commission is not authorized to give legal advice and therefore cannot provide you with the same. Thus, with regard to your legal rights and the course you should follow in this matter, it is suggested you seek legal counsel.

For these reasons, we believe that the Piccolos' efforts do not constitute "due diligence."

The Piccolos also argue that the various state and federal agencies from which they sought advice misled them on the appropriate means to challenge the arbitration panel's award. Although one letter arguably might have given rise to some confusion,[6]

---

**5.** Although the court in *Holodnak* premised its discussion on the due diligence of plaintiff, it rested its holding on alternative grounds.

> Moreover, under the Federal Rules of Civil Procedure, Rule 6(a), when the last day of the limitations period falls on a Sunday, as was the case here, the period is extended until the end of the following day. While the Arbitration Act contains no such provision, the policy of liberality embodied in Fed.R. Civ.P. 6(a) should be applied by analogy. [*Id.* at 198.]

See Fed.R.Civ.P. 81(a)(3) (Federal Rules of Civil Procedure apply to proceedings under United States Arbitration Act to the extent that matters of procedure are not provided for in the Act). Thus, *Holodnak* need not be read as necessarily carving out a "due diligence" exception to the time limitation established by 9 U.S.C. § 12.

**6.** In a letter from the Denver office of the Securities and Exchange Commission, the regional administrator wrote:

> Although the Commission is appreciative of all information supplied by the public regarding possible violations of the rules and regulations with which the Commission is charged with administering, the Commission is not the appropriate forum from whom you should seek rehearing. In this regard, your attention is drawn to Section 34 of the National Association of Securities Dealers Code of Arbitration Procedure (attached hereto) which describes *the procedure you must follow to have a re-hearing.* (Emphasis added.)

Section 34, in turn, provides:

> Where permitted by law, the panel of arbitrators presiding shall be empowered to reopen any hearing upon its own initiative or upon the application of any party who can demonstrate by the showing of good cause to

that letter, as did all others, strongly and repeatedly urged the Piccolos to seek legal advice on the matter. The issuance of such advice can hardly be regarded as misleading under the circumstances, particularly when they learned from Ryder over two months before the three-month period expired that relief from the award was "a matter for the courts and would be governed by applicable state or federal law."

Accordingly, we affirm the district court's order dismissing the Piccolos' complaint as untimely filed.

the satisfaction of the said panel of arbitrators that such reopening is warranted by the circumstances.

Inasmuch as the Piccolos consistently used the term "rehearing" to describe the purpose of their various letters, the SEC's response may have led them to believe that they could obtain relief from the arbitration award outside of the courts. Nevertheless, once the chairperson of the arbitration panel denied the Piccolos' request for a reopening of the hearing, they had no reasonable basis for believing that this procedure would afford relief outside of the courts. Significantly, that denial occurred prior to the expiration of the three-month period for obtaining judicial review of the arbitration award.