**HOBET MINING, INC., Plaintiff,**

**and**

**Bituminous Coal Operators' Association, Involuntary Plaintiff,**

**v.**

**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA; District 17, United Mine Workers of America; and Local Union 2286, Defendants.**

**No. 2:92–0569.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Sept. 19, 1994.

Forrest H. Roles, Donna M. Colberg, Smith, Heenan & Althen, Charleston, WV, for plaintiff.

Maureen Geraghty, UMWA Intern. Union, Washington, DC, Robin Jean Davis, Charleston, WV, for defendants.

### MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the cross motions for summary judgment filed by plaintiff Hobet Mining, Inc., and defendants International Union, United Mine Workers of America, United Mine Workers of America District 17 and Local Union 2286 (hereinafter, International UMWA and District 17, or, collectively the Unions). The action arises

under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

In its amended complaint, Hobet seeks vacation of an arbitration award unfavorable to it entered by Arbitrator Lawrence Roberts on January 10, 1992; vacation of a portion of an award adverse to it entered by Arbitrator David S. Tanzman on May 24, 1992; reimbursement for all amounts paid pursuant to the two awards; and an order disqualifying Arbitrator Roberts from further service on District Arbitration Panels in District 17. Defendants, by way of counterclaim, ask *inter alia,* that the arbitration awards be upheld.

Plaintiff Bituminous Coal Operators Association, (hereinafter, BCOA), an involuntary plaintiff, takes no position with respect to vacation or enforcement of the arbitration awards but states that it will comply with any order of the court either removing or retaining Arbitrator Roberts as an arbitrator, subject to its right to select, jointly with defendant International UMWA, new panels of arbitrators under the National Bituminous Coal Wage Agreement of 1993. (Statement of BCOA, filed 9/23/93.)

By stipulation filed on April 22, 1994, Hobet and the Unions submitted the case for disposition on their cross motions for summary judgment.[1] The sole ground relied on by Hobet for vacation of the arbitration award rendered by Arbitrator Roberts is that of evident partiality and is based on Roberts' failure to disclose that he has a brother who is an employee of the International UMWA. The subsequent award entered by Arbitrator Tanzman, Hobet asserts, should also be vacated insofar as it gave res judicata effect to a portion of Arbitrator Roberts' decision.

By further stipulation, Hobet and the Unions agree that the issue of whether Arbitrator Roberts should be disqualified from further service on District Arbitration Panels has become moot during the pendency of this action. The court accordingly does not address that issue.

I. *Background*

Hobet and the Unions are signatories to a collective bargaining agreement, the National Bituminous Coal Wage Agreement of 1988. After exhaustion of a grievance procedure, the Agreement provides a mechanism for the settlement of disputes between the Unions and signatory employers by final and binding arbitration conducted before district arbitrators. (Defs.' App. A, 1988 Wage Agreement at Art. XXIII.) District arbitrators are selected by the president of the International UMWA and the president of BCOA, which acts on behalf of its members, including Hobet. (*Id.* at Art. XXIII(b)(1).) Once a district arbitrator is selected, he serves for a period of eighteen months unless removed from the panel by "mutual consent" of the International UMWA and BCOA. (*Id.* at Art. XXIII(b)(1); Phalen 2d Aff. at ¶ 5.) At the expiration of the term of service, the arbitrator's performance is reviewed and, if satisfactory to both BCOA and the International UMWA, a reappointment is made for the duration of the Wage Agreement. (Phalen 2d Aff. at ¶ 5.)

At all times pertinent, the arbitration selection process for District 17 was conducted by Steven Winsor Lindner, co-administrator of the Coal Arbitration Service, on behalf of the International UMWA, and Tom Waddington, co-administrator of the Coal Arbitration Service, on behalf of BCOA. (Defs.' App. D, Lindner Aff. at ¶¶ 2–4.) The process used by the Coal Arbitration Service in the selection of district arbitrators calls for both the International UMWA and BCOA to submit nominees to the Federal Mediation and Conciliation Service, (hereinafter, FMCS), which adds its own nominees and compiles a list containing nominees selected by all three. (Lindner Aff. at ¶¶ 5, 8.) In selecting nominees, the International UMWA confers with its district unions and BCOA consults with its member companies. (Lindner Aff. at ¶¶ 6–7.) Once FMCS compiles the joint list,

the International UMWA and BCOA are free to check references and any other sources of information about the nominees and may conduct personal interviews. (Lindner Aff. at ¶ 9.) After the investigations are completed, each side is entitled to strike a number of names. (Lindner Aff. at ¶ 13.) Those nominees who remain on the list constitute the final panel of arbitrators for a particular union district. (Lindner Aff. at ¶ 14.)

As part of the selection process, the International UMWA and BCOA have jointly developed a "Prescribed Resume." (Lindner Aff. at ¶ 10.) The Prescribed Resume asks about the applicant's present occupation or profession, his educational background, his arbitration experience, his customary fee, and his willingness to travel. It also asks the following questions:

> HAVE YOU EVER BEEN EMPLOYED AS EITHER A LABOR RELATIONS CONSULTANT OR AS LEGAL COUNSEL BY A COMPANY IN A CAPACITY IN WHICH YOU REPRESENTED THE EMPLOYER'S INTEREST IN LABOR RELATIONS MATTERS? IF SO, PLEASE GIVE THE PARTICULARS.

> HAVE YOU EVER BEEN EMPLOYED BY A UNION OR REPRESENTED A UNION'S INTEREST IN LABOR RELATIONS MATTERS? IF SO, PLEASE GIVE THE PARTICULARS OF YOUR EMPLOYMENT.

> DO YOU, OR DOES ANY MEMBER OF YOUR IMMEDIATE FAMILY, HOLD ANY ECONOMIC INTEREST IN ANY COAL OR COAL–RELATED COMPANY? IF SO, PLEASE GIVE THE PARTICULARS.

> HAVE YOU EVER BEEN A MEMBER OF THE UMWA? IF SO, PLEASE GIVE THE PARTICULARS OF YOUR MEMBERSHIP DURATION AND ACTIVITIES.

(Lindner Aff. at Ex. A.) In completing the Prescribed Resume, Roberts answered each of the quoted questions in the negative.

Following the procedure developed by BCOA and the International UMWA, Roberts was selected as an arbitrator for District 17 in 1990.[2] (Lindner Aff. at ¶ 31.) From the time of his appointment until December 12, 1992, Arbitrator Roberts decided twenty-one cases in District 17. (Defs.' App. C, Phalen Aff. at ¶¶ 4 & 5.) Eight decisions were in favor of the Unions and ten were in favor of the employer, with two decisions being "split," and one case being withdrawn before decision. (Phalen Aff. at ¶ 5.) Two of the proceedings held before Arbitrator Roberts involved Hobet. Hobet prevailed in one case but lost a work jurisdiction dispute decided by Arbitrator Roberts on September 8, 1992. (Phalen Aff. at ¶ 6 & attached Ex. A.)

Arbitrator Roberts is a member of the American Arbitration Association, (hereinafter, AAA), which requires its members to subscribe to the Code of Professional Responsibility for Arbitrators of Labor–Management Disputes, (hereinafter, the Code).[3] The Code requires disclosures of certain relationships between the arbitrator and parties to the arbitration. In particular, arbitrators governed by the Code have the following duties of disclosure:

> The duty to disclose includes membership on a Board of Directors, full-time or part-time service as a representative or advocate, consultation work for a fee, current stock or bond ownership (other than mutual fund shares or appropriate trust arrangements) or any other pertinent form of managerial, financial or immediate family interest in the company or union involved [in a proceeding to be heard by him].

(Code at 7–8.) The Code further states that "[a]n arbitrator must not permit personal relationships to affect decision-making" and that "[p]rior to acceptance of an appointment, an arbitrator must disclose to the parties ... involved any close personal relationships or other circumstances, in addition to those specifically mentioned earlier in this section,

---

**2.** Beginning in 1988, Roberts has also served as an arbitrator in other districts and on other occasions has been stricken by BCOA. (Lindner Aff. at ¶ 19.)

**3.** The Code is published by the National Academy of Arbitrators, the AAA and the Federal Mediation and Conciliation Service.

which might reasonably raise a question as to the arbitrator's impartiality." (Code at 8.)

On December 17, 1991, Hobet and District 17 submitted a contracting out dispute to arbitration in accordance with the provisions of the 1988 Wage Agreement. The dispute was heard by Arbitrator Roberts and his award in favor of District 17 was entered on January 10, 1992. A second contracting out dispute between Hobet and District 17 was submitted to Arbitrator Tanzman, who rendered a damage award in favor of District 17 on May 24, 1992, based in part on Arbitrator Roberts' award, which found that Hobet used a "sixteen hour work schedule." The parties in both proceedings were Hobet, District 17 and Local 2286. (Defs.' App. F & G.) The International UMWA is not listed as a party and no health or safety matter was an issue in either proceeding.

By memorandum from BCOA's president, dated May 26, 1992, and received shortly thereafter by Hobet, Hobet learned for the first time that Arbitrator Roberts has a brother, Thomas Rabbitt Zajac, who is an employee of the International UMWA. BCOA apparently became aware of the relationship from a newspaper article published on March 24, 1992. It is undisputed that Roberts did not disclose the relationship to BCOA during the arbitrator selection process or to Hobet prior to hearing the dispute between Hobet and District 17. After learning of the relationship between Arbitrator Roberts and Zajac, BCOA asked Roberts to resign from the District 17 arbitration panel. He refused to do so and the International UMWA rejected a request made by BCOA on May 13, 1992, that he be removed by mutual agreement.

Since approximately May 1989, Zajac has been the International Representative for Health and Safety for UMWA Districts 4 and 5, located in Pennsylvania. (Zajac Aff. at ¶ 7.) His duties include advising and representing UMWA members in his districts on matters concerning health and safety. (Zajac Aff. at ¶ 7.) He is not an elected official of the UMWA, has no responsibilities for

matters of a contractual nature between the Unions and BCOA, and has not been involved in an arbitration case on behalf of the International UMWA since 1982. (Zajac Aff. at ¶¶ 4, 7.) At times in the past, Roberts resided with Zajac and the two brothers jointly own a laundromat. (Zajac Aff. at ¶ 11.)

This action to vacate the award entered by Arbitrator Roberts on January 10, 1992, and a portion of the one entered by Arbitrator Tanzman on May 24, 1992, was commenced on June 17, 1992. On the basis of the disclosure requirements of the Code, Hobet asserts that Arbitrator Roberts was ethically compelled to inform BCOA that he has a brother who is a "high ranking employee" or "official" of the International UMWA and that his failure to make the disclosure warrants vacation of the award he entered in favor of District 17. It is maintained by the defendants, however, and Hobet does not assert otherwise, that under the 1988 Wage Agreement, neither membership in the AAA nor adherence to the Code is required, leaving such matters as disclosure within the discretion of the arbitrators.[4] (Lindner Aff. at ¶ 20.) Hobet also contends that the familial relationship between Arbitrator Roberts and Zajac constitutes evident partiality *per se*.

For their part, the defendants first contend that Hobet's action to vacate Arbitrator Roberts' award is barred by the applicable statute of limitations. They also maintain that Arbitrator Roberts had no duty to disclose his relationship to Zajac. Further, they assert, the relationship itself cannot support a finding of evident partiality, particularly in light of Arbitrator Roberts' history of impartial rulings in District 17 disputes he has arbitrated under the 1988 Wage Agreement.

## II. Discussion

### A. Timeliness of Motion to Vacate

Neither section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), nor West Virginia law, provide a

---

4. By its language, the Code applies only to members of the National Academy of Arbitrators, arbitrators appointed or referred by the AAA and the Federal Mediation and Conciliation Service, and others who voluntarily adopt it. (Code, Defs.' App. H, at 4.)

statute of limitations for actions to vacate arbitration awards. *Sheet Metal Workers Int'l v. Power City Plumbing & Heating, Inc.*, 934 F.2d 557, 559 (4th Cir.1991). Consequently, the Fourth Circuit Court of Appeals has approved borrowing the limitations period found in section 12 of the Federal Arbitration Act, (hereinafter, FAA), 9 U.S.C. § 12, for section 301 actions brought in the federal courts of West Virginia to vacate arbitration awards. *Id.* at 560. In accordance with section 12, "[n]otice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12.

In the context of section 301 motions to vacate, the Fourth Circuit Court of Appeals has not had occasion to address whether there are any exceptions to the three month limitations period borrowed from the FAA. The possibility of exceptions was discussed in *Taylor v. Nelson*, 788 F.2d 220 (4th Cir. 1986), a case brought directly under the FAA. In *Taylor*, the motion to vacate was untimely, but the district court vacated the award on the reasoning that the pendency of a motion to confirm served to toll the statute of limitations and that Taylor acted with due diligence in moving to vacate. *Id.* at 225. The Fourth Circuit Court of Appeals reversed, holding that "once the three-month period has expired, an attempt to vacate an arbitration award [can] not be made even in opposition to a later motion to confirm." *Id.* (adopting the rule enunciated in *Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir.1984)); *see also, Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 151 (4th Cir.1993) (citing *Taylor*, 788 F.2d at 225) (stating in dicta that inasmuch as the language of § 12 "is mandatory," motions pursuant to its provision "made beyond three months after the award are time barred").

The court further noted in *Taylor* that the existence of tolling and due diligence exceptions to the limitations period of section 12 "is questionable, for they are not implicit in the language of the statute, and cannot be described as common-law exceptions." *Taylor*, 788 F.2d at 225. In any event, it was not necessary to decide whether exceptions

might exist, there having been nothing to prevent Taylor from timely filing the motion to vacate. *Id.* at 225–26. The district court order vacating the arbitration award was accordingly vacated and the case remanded for entry of an order confirming the award. *Id.* at 226.

Courts in other jurisdictions have similarly viewed with skepticism the suggestion that tolling or due diligence exceptions to the notice provisions of section 12 of the FAA might be available. *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir.), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); *Sanders–Midwest, Inc. v. Midwest Pipe Fabricators, Inc.*, 857 F.2d 1235, 1238 (8th Cir.1988); *Piccolo v. Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 601 (8th Cir.1981); *Franco v. Prudential Bache Sec. Inc.*, 719 F.Supp. 63 (D.P.R.1989). Indeed, only one reported federal case, *Holodnak v. Avco Corp.*, 381 F.Supp. 191 (D.Conn.1974), *aff'd in part, rev'd in part*, 514 F.2d 285 (2d Cir.), *cert. denied*, 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975), seemingly recognizes an exception. In *Holodnak*, a complaint seeking to vacate was timely filed but plaintiff was unable to obtain service of process within the three months allowed by section 12, largely because of an overload of business in the United States Marshal's office and the inability of a substitute process server to effect service until one day after the expiration of the limitations period. *Id.* at 197. Under the circumstances, the court found that plaintiff's "due diligence" in attempting to comply with the statute would not bar the action. *Id.* However, as the court noted in *Piccolo*, the *Holodnak* decision rests as well on the alternative ruling that inasmuch as the last day of the limitations period fell on a Sunday, application of Rule 6(a) of the Federal Rules of Civil Procedure would result in a finding that the section 12 notice was timely. *Piccolo*, 641 F.2d at 601 n. 5, (citing *Holodnak*, 381 F.Supp. at 198).

None of the cited cases involve a situation where the party seeking vacation of an arbitration award did not discover the asserted basis for its motion until after the limitations period had expired. Nonetheless,

the language of section 12 neither expressly nor implicitly, *see Taylor, supra,* page 1017, allows of any exceptions, even for grounds such as "evident partiality," 9 U.S.C. § 10(a)(2), which might not become known until more than three months has passed. The court accordingly agrees that it is questionable that Hobet can avoid the three month limitations period borrowed from section 12 on the reasoning that it had no knowledge of the relationship between Arbitrator Roberts and International UMWA employee Zajac until after the limitations period governing the Roberts' award expired.[5] Nonetheless, the statute of limitations would bar vacation of only Arbitrator Roberts' award, not that of Arbitrator Tanzman. The court accordingly finds it appropriate to address Hobet's claim of evident partiality.

## B. *Evident Partiality*

■ Although it is agreed by the parties that the FAA "does not apply to disputes stemming from collective bargaining agreements," *Domino Sugar Corp. v. Sugar Workers Local Union 392,* 10 F.3d 1064, 1067 (4th Cir.1993) (citing 9 U.S.C. § 1), it is also recognized that courts in other jurisdictions have entertained FAA section 10 evident partiality challenges to arbitration awards rendered pursuant to a collective bargaining agreement,[6] *Apperson v. Fleet Carrier Corp.,* 879 F.2d 1344 (6th Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 533 (1990) (approving district court's adoption of the evident partiality provision of the FAA in suit brought to vacate an arbitration award rendered pursuant to a collective bargaining agreement); *Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095,* 834 F.2d 751 (9th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988) (applying evident partiality provision of the FAA without discussion of its applicability to

arbitration award rendered pursuant to an arbitration provision in a collective bargaining agreement); *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79 (2d Cir.1984) (same). On the strength of the cited authority, the court finds that it is appropriate to borrow from the FAA the evident partiality ground for vacation and apply it to this action.

■ In general, to demonstrate "evident partiality" under the FAA, the party seeking vacation has the burden of proving that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." [7] *Morelite,* 748 F.2d at 84; *accord Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 991 F.2d 141, 146 (4th Cir.1993) (citing with approval the *Morelite* standard as quoted in *Apperson* ); *Apperson,* 879 F.2d at 1358 (adopting *Morelite* standard); *Austin South I, Ltd. v. Barton–Malow Co.,* 799 F.Supp. 1135, 1142 (M.D.Fla. 1992) (applying *Morelite* standard); *cf. Sunkist Soft Drinks v. Sunkist Growers,* 10 F.3d 753, 758 (11th Cir.1993), *petition for cert. filed,* 63 USLW 3065 (July 6, 1994) (party alleging evident partiality must prove conduct creating "a reasonable appearance of bias"); *Sheet Metal Workers Int'l Ass'n Local Union # 420 v. Kinney Air Cond. Co.,* 756 F.2d 742, 745 (9th Cir.1985) (party alleging evident partiality must establish "a reasonable impression" of partiality). "The alleged partiality must be 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative.'" *Peoples,* 991 F.2d at 146 (quoting *Health Servs. Mgt. Corp. v. Hughes,* 975 F.2d 1253, 1264 (7th Cir.1992) (quoting *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 173–74 (2d Cir.1984)); *see also Middlesex Mut. Ins. Co. v. Levine,* 675 F.2d 1197, 1202 (11th Cir.1982) (quoting *Tamari v. Bache Halsey Stuart, Inc.,* 619 F.2d

---

5. In this respect, it is also noted that although Hobet maintains it did not learn of the relationship until it received BCOA's memorandum of May 26, 1992, BCOA itself discovered the relationship by reading a newspaper account dated March 24, 1992, a date within three months of the January 10, 1992, award by Arbitrator Roberts.

6. The FAA provides, *inter alia,* for vacation of an arbitration award "[w]here there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2).

7. The "reasonable person" standard requires a showing of something more than the "appearance of bias," but not the "insurmountable" standard of "proof of actual bias." *Morelite,* 748 F.2d at 84.

1196, 1200 (7th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980)). Moreover, the party asserting evident partiality "must establish specific facts that indicate improper motives on the part of the arbitrator." *Peoples,* 991 F.2d at 146.

█ The enunciated general principles are utilized in evaluating claims of evident partiality based on both the failure to disclose a relationship and the relationship itself. The court accordingly examines, in turn, Hobet's claim that Arbitrator Roberts' failure to disclose that he has a brother who is an employee of the International UMWA is a sufficient basis for vacation and the additional claim that the relationship between Arbitrator Roberts and Zajac, without more, establishes evident partiality.

### 1. *Failure to Disclose*

█ Arbitrators are encouraged to make advance disclosure of relationships with parties appearing before them and the failure to do so may justify setting aside an award on the ground of evident partiality. *Sanford Home for Adults v. Local 6, IFHP,* 665 F.Supp. 312, 317 (S.D.N.Y.1987). Disclosure enables parties to select an arbitrator intelligently, *Schmitz v. Zilveti,* 20 F.3d 1043 (9th Cir.1994), precludes a disgruntled party from claiming partiality as a pretext for vacating an unfavorable award, *Sun Refining & Mktg. Co. v. Statheros Shipping Corp.,* 761 F.Supp. 293, 300 (S.D.N.Y.), *aff'd* 948 F.2d 1277 (2d Cir.1991); *Sanford Home,* 665 F.Supp. at 318, and serves the goal of minimizing judicial interference in the arbitral process, *Sun Refining,* 761 F.Supp. at 301 (quoting *Marc Rich & Co. v. Transmarine Seaways Corp.,* 443 F.Supp. 386, 387 (S.D.N.Y.1978)). Nonetheless, courts are reluctant to set aside awards on the basis of nondisclosure, *Sanford Home,* 665 F.Supp. at 317, and the failure to disclose does not alone warrant vacation, *Sun Refining,* 761 F.Supp. at 300. *See also Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 680–81 (7th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983). Nondisclosure instead only subjects the award to review for evident partiality. *Sun Refining,* 761 F.Supp. at 300–01.

█ Indeed, it is held that even where the failure to disclose is "a material violation of the ethical standards applicable to arbitration proceedings, it does not follow that the arbitration award may be nullified judicially" inasmuch as codes of ethics "do not have the force of law." *Merit,* 714 F.2d at 680. In that regard, it is recognized that private arbitration services, such as the AAA, who compete with others offering the same services, may "set its standards as high or as low as it thinks its customers want," but the standards it sets in its code of ethics "does not lower the threshold for judicial intervention." *Id.* at 681. Thus, a technical violation of an ethical standard does not, standing alone, justify setting aside an award on the ground of evident partiality. *Id.*

█ Courts also recognize that where parties have selected arbitrators in accordance with the requirements of a collective bargaining contract, the selection method should be presumed fair. *See Sheet Metal Wkrs. Int'l Ass'n Local Union # 420 v. Kinney Air Cond. Co.,* 756 F.2d 742, 746 (9th Cir.1985). Similarly, inasmuch as expertise in the field is frequently an attractive feature of arbitration, "parties can justifiably be held to know at least some kinds of basic information about an arbitrator's personal and business contacts." *Andros Compania Maritima v. March Rich & Co.,* 579 F.2d 691, 701 (2d Cir.1978). For the same reason, the parties should expect that arbitrators, as "expert adjudicators," are more likely than judges "to be precommitted to a particular substantive position." *Merit Ins.,* 714 F.2d at 679. In other words, "[p]arties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." *Id.* Consequently, where information about an arbitrator is not known in advance, but could have been ascertained by more thorough inquiry or investigation, a post-award challenge suggests that nondisclosure is being raised merely as a "tactical response to having lost the arbitration," *id.* at 683, or an inappropriate attempt to seek a "second bite at the apple" because of dissatisfaction with the outcome, *Remmey v. Paine Webber, Inc.,* 32 F.3d 143, 146 (4th Cir. Aug. 19, 1994).

To the extent that Hobet seeks vacation on the basis of Arbitrator Roberts' failure to disclose that he has a brother, Thomas Zajac, who is employed by the International UMWA, it relies primarily on Roberts' membership in the AAA and its requirement that members adhere to the Code of ethics applicable to labor-management disputes. It is agreed, however, that insofar as Roberts performed arbitral services under the 1988 Wage Agreement, he was not required by the Coal Arbitration Service to be a member of the AAA or to abide by the disclosure requirements of the Code. It is reasonable to assume that the only conflict of interest disclosures deemed pertinent by BCOA and the International UMWA are those set forth in the Prescribed Resume. Inquiry is there made as to whether the applicant has ever been a member of the UMWA or employed by a union. No similar query is made with respect to persons in the applicant's immediate family. Rather, the only question directed to members of the applicant's immediate family is whether they have any economic interest in any coal or coal-related company. Had BCOA, including its member, Hobet, wanted disclosure of any immediate relative's membership in, or employment with, a union or the UMWA in particular, questions of that nature could have been included in the Prescribed Resume. Alternatively, separate inquiry could have been made. Hobet, through BCOA, having made the decision to ask only the questions contained in the Prescribed Resume and having undertaken no additional investigation directed to Roberts' family, should not now strive to place the fault for nondisclosure on Roberts. Their effort to do so suggests that they are simply dissatisfied with the award.

Moreover, assuming without deciding that Roberts was required by the Code to disclose that he had a brother who was employed by the International UMWA, the failure to make that disclosure must be viewed as merely a technical violation of the Code which does not, standing alone, warrant vacation unless Hobet can otherwise demonstrate evident partiality. The court accordingly examines the allegation that the relationship itself establishes evident partiality.

## 2. The Relationship

Hobet relies primarily on the decision in *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds,* 748 F.2d 79 (2d Cir.1984), for its contention that the relationship between Roberts and Zajac establishes evident partiality *per se* and warrants vacation of the award rendered by Roberts. Morelite, having been compelled to arbitrate a dispute with a district union, moved in federal court to disqualify the designated arbitrator because the arbitrator's father was then a vice president of the international union of which the district union was a local. *Morelite,* 748 F.2d at 81. The motion was denied on the reasoning that the court lacked authority to entertain an attack on an arbitrator's partiality until after an award was entered. *Id.* Arbitration was commenced, during which proceedings the arbitrator's father was named general president of the international union. *Id.* An award was entered in favor of the union and Morelite thereafter appealed the district court's denial of its motion to vacate on the ground of evident partiality based on the father-son relationship. *Id.* at 81–82.

In formulating and applying the "reasonable person" standard for evident partiality, *see, supra,* page 1018, the Second Circuit Court of Appeals concluded that the father-son relationship established evident partiality and warranted *per se* vacation of the arbitrator's award. *Id.* at 84–85. In reaching its decision, the court noted that it did not know how close the father and son were, or "how independent the son is of the father, or how divergent their views on the issues giving rise to the arbitrated dispute." *Id.* at 84. Without knowing more about the relationship, the court felt bound by its "strong feeling that sons are more often than not loyal to their fathers, partial to their fathers, and biased on behalf of their fathers." *Id.* It accordingly "perceiv[ed] ... unfairness" in allowing the award to stand. *Id.* At the same time, the court recognized that any "list of familial or other relationships that will result in the *per se* vacation of an arbitration award ... would most likely be very short." *Id.* at 85. It further cautioned that by its

finding of evident partiality based solely on the father-son relationship, it did not "intend that unsuccessful parties to arbitration may have awards set aside by seeking out and finding tenuous relationships between the arbitrator and the successful party." *Id.*

■ On the basis of *Morelite*, Hobet urges the court to expand the list of familial relationships which would warrant a *per se* vacation of an arbitration award to include brothers. The court declines to do so, finding that Zajac's position as an employee of the International UMWA is not comparable to that of the father in *Morelite*, which was that of president of the international union. An employee of a union simply does not have the same identity with the organization as that of its president. Nor is the court prepared to find that the father/son loyalty and partiality assumed by the court in *Morelite* most likely exists in a sibling relationship. It is accordingly more appropriate to examine the nature of the relationship and its connection to the arbitration dispute to determine whether Hobet has met its burden of proving direct and definite partiality or specific facts indicating improper motive such that a reasonable person, looking at all of the circumstances, would have to conclude that Arbitrator Roberts, because of his relationship with Zajac, was partial to District 17.

■ In undertaking its examination, the court utilizes the following factors considered by other courts in evaluating a claim of evident partiality based on the relationship between an arbitrator and one of the parties to the arbitration: (1) any personal interest, pecuniary or otherwise, the arbitrator has in the proceeding, *Sanford Home for Adults v. International Fed'n of Health Professionals, Local 6,* 665 F.Supp. 312, 320 (S.D.N.Y.1987); *Austin South,* 799 F.Supp. at 1142; *see also Apperson,* 879 F.2d at 1360 & n. 21 (citing *Sanford Homes,* 665 F.Supp. at 320); (2) the directness of the relationship between the arbitrator and the party he is alleged to favor, *Sanford Home,* 665 F.Supp. at 320, keeping in mind that the relationship must be "substantial," rather than "trivial," in order to establish evident partiality, *Austin South,* 799 F.Supp. at 1142; *cf. Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673 (7th

Cir.1983) (relationship must be "so intimate—personally, socially, professionally, or financially—as to cast serious doubt" on the arbitrator's impartiality); (3) the relationship's connection to the arbitration, *see Local 814, IBT v. J & B Systems Installers & Moving, Inc.,* 878 F.2d 38, 40 (2d Cir.1989); *Hunt v. Mobil Oil Corp.,* 654 F.Supp. 1487, 1499–1500 (S.D.N.Y.1987); and (4) the proximity in time between the relationship and the arbitration proceeding, *Sanford Home,* 665 F.Supp. at 320; *see Austin South,* 799 F.Supp. at 1142.

■ Looking to the first factor, it is seen that Arbitrator Roberts had no financial or personal interest in the outcome of the dispute between Hobet and District 17 which would suggest partiality toward District 17. As to the fourth factor, it must be conceded that the sibling relationship alleged to demonstrate partiality existed simultaneously with the arbitration proceeding. However, with respect to the second factor, it cannot be said that the relationship between Arbitrator Roberts and District 17, the party he is alleged to favor, is a direct or substantial relationship. Neither the International UMWA nor Zajac was a party to the arbitration. Consequently, even though Arbitrator Roberts might be inclined to favor Zajac in a dispute involving him, that favoritism cannot be presumed to carry over to a local unit of Zajac's employer. In addition, as to the third factor, the relationship between Arbitrator Roberts and Zajac, which creates only an indirect and tenuous relationship between Roberts and District 17, has no connection to the dispute heard by Roberts. Zajac had no discernible interest in the outcome of a dispute centered around the contracting-out of union work. Zajac's interest, as an employee of the International UMWA, instead centered on health and safety issues, matters having no connection with the dispute between Hobet and District 17.

In sum, the partiality alleged by Hobet is based on an indirect relationship between Arbitrator Roberts and District 17, the party to the arbitration proceeding. The indirect relationship identified as establishing impartiality, in turn, has no connection with the issues submitted to arbitration. Neither Ar-

**1022**

bitrator Roberts, nor Zajac, the person supposedly creating partiality toward District 17, nor any of the union members Zajac represents on health and safety matters, has any demonstrable interest in the outcome of the contracting-out dispute between Hobet and District 17. The court thus concludes that Hobet's claim of alleged partiality toward District 17, based on Arbitrator Roberts having a brother employed by the International UMWA to represent union employees in another district on matters not involved in the dispute heard by Roberts is at best remote, uncertain and speculative.

Furthermore, inasmuch as there is no evidence that either Arbitrator Roberts or his brother, Zajac, would gain anything personally from a decision favorable to District 17, Hobet has failed to establish specific facts which indicate improper motive on the part of Arbitrator Roberts. The absence of evidence demonstrating improper motive is accentuated by the uncontroverted showing that in disputes involving District 17, Arbitrator Roberts has a history of ruling against the union more than half the time.

Considering all of the circumstances, the court finds that a reasonable person would not have to conclude that Arbitrator Roberts' was partial to District 17 because he has a brother employed by the International UMWA in another district. Vacation of the arbitration award rendered by Arbitrator Roberts in favor of District 17 on January 10, 1992, on the ground of evident partiality is accordingly not warranted. Having determined that Hobet has failed to demonstrate that the award entered by Arbitrator Roberts should be vacated on the ground of evident partiality, it follows that there is no basis for vacating the award entered by Arbitrator Tanzman on May 24, 1992.

### III. *Conclusion*

For the reasons stated, it is ORDERED that the motion for summary judgment filed by Hobet Mining, Inc., be, and the same hereby is, denied. It is further ORDERED that the motion for summary judgment filed by defendants International Union, United Mine Workers of America, United Mine Workers of America District 17 and Local Union 2286 be, and the same hereby is,

granted insofar as it seeks to uphold the arbitration award entered by Arbitrator Lawrence Roberts on January 10, 1992, and a portion of an arbitration award entered by Arbitrator David S. Tanzman on May 24, 1992, in favor of District 17 and against Hobet Mining, Inc.

The Clerk is directed to forward copies of this order to all counsel of record.