**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff–Appellee,**

v.

**Robert W. BERRY and Diane L. Spencer, Defendants– Appellants.**

**No. 02–4282.**

United States Court of Appeals, Sixth Circuit.

Feb. 26, 2004.

**244**

Stephen M. Bales, Ziegler, Metzger & Miller, Cleveland, OH, David F. McComb, Rubin & Associates, Paoli, PA, for Plaintiff–Appellee.

Kenneth A. Bravo, Matthew J. Morelli, Ulmer & Berne, Cleveland, OH, William A. Jacobson, Providence, RI, for Defendants–Appellants.

Before BOGGS, Chief Judge; GUY, Circuit Judge; and HOOD, District Judge.[*]

PER CURIAM.

Defendants–Appellants Robert Berry and Diane Spencer appeal from the district court's denial, on statute of limitations grounds, of their motion to vacate an arbitration panel's award. We affirm the decision of the district court.

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

**I**

Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") brought this action against Defendants, who had previously worked for Merrill Lynch as stockbrokers. Merrill Lynch claimed breach of non-solicitation and non-competition agreements, and related torts. Defendants brought several counterclaims, including age discrimination and retaliatory discharge. The district court stayed proceedings pending binding arbitration by an NASD panel. On March 4, 2002, the arbitration panel granted Merrill Lynch's claims and granted Defendants' claim for defamation only, and awarded Merrill Lynch injunctive and net financial relief.

Over four months later, on July 19, 2002. Defendants allegedly became aware of a possible conflict of interest on the part of Daniel G. Zeiser ("Zeiser"), the chairman of the arbitration panel. Defendants received a copy of a disclosure statement created by Zeiser in his role as an NYSE arbitrator, which states that Zeiser had once been named as a defendant in a discrimination charge (the "Discrimination Charge"). Zeiser's disclosure statement gave no other details, except that the matter was settled favorably to him. Defendants do not know when Zeiser first disclosed this matter to NYSE arbitration users.

Defendants began research to uncover the facts of the Discrimination Charge. They uncovered no further details about it, but their search for Zeiser's name on the website of the Cuyahoga County Court of Common Pleas (Zeiser's home county) revealed a second possible conflict. Zeiser had been a plaintiff in a lawsuit (the "Common Pleas Lawsuit") in which one defendant had been represented by an attorney

in the firm of Ulmer & Berne LLP. Different Ulmer & Berne attorneys are local counsel for Defendants in the case before us. The Common Pleas Lawsuit was settled and dismissed at just about the date that Zeiser was appointed to the arbitration panel.

Zeiser had disclosed neither of these possible conflicts of interest to Defendants. Zeiser had, however, disclosed other matters. Notably, he disclosed that he had worked with (not against) yet another Ulmer & Berne attorney on various matters for Zeiser's former employer First Union before the arbitration.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, an arbitration award may be vacated upon motion if "there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). Evident partiality is found "only where a reasonable person would have to conclude that an arbitrator was partial to one party in the arbitration." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328–29 (6th Cir.1998) (quotation omitted). Bias must be "direct, definite, and capable of demonstration, and the party asserting it must establish specific facts that indicate improper motives on the part of the arbitrator." *Id.* at 329 (quotation omitted). The motion to vacate must be filed within three months of the panel's decision. 9 U.S.C. § 12.

Defendants concede that mere failure to disclose, in and of itself, is not grounds to vacate the award. *ANR Coal Co. v. Cogentrix of N.C. Inc.*, 173 F.3d 493, 499 (4th Cir.1999). Nevertheless, based on Zeiser's allegedly suspicious pattern of partial disclosure, Defendants moved in the district court to vacate the award. The motion was filed on October 2, 2002, almost seven months after the arbitration award was rendered. The district court denied the motion as untimely, and Defendants appeal.

## II

Defendants sought to have the FAA limitations period equitably tolled. The district court held that equitable tolling cannot be based on non-party fraud. Because this holding was a matter of law, our review is *de novo. Dunlap v. United States,* 250 F.3d 1001, 1008 n. 5 (6th Cir.2001).

The district court relied entirely on *Geromette v. General Motors Corp.,* 609 F.2d 1200, 1203 (6th Cir.1979), *cert. denied,* 446 U.S. 985, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980), which found equitable tolling inappropriate inasmuch as the plaintiff had not alleged fraud by the defendant. The plaintiff had not, however, alleged non-party fraud either. Since equitable tolling is most often based on adverse-party fraud, it is natural that *Geromette* highlighted the absence of this circumstance, but our opinion did not hold that adverse-party fraud is the only possible equitable reason to toll a limitation period. "[C]ourts have not hesitated to at least consider and in some circumstances apply equitable tolling in contexts in which the [non-movant] employer's conduct has not caused the [movant] employer to delay." *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.1988) (quoting *Fox v. Eaton Corp.,* 615 F.2d 716, 718 (6th Cir.1980)). Indeed, the *Andrews* court tolled the statutory period because the lower court had issued a confusing order—a problem caused by the adjudicator, not by the adverse party. *Ibid.* We generally consider several nonexclusive factors to decide whether to toll: 1) the movant's lack of actual or constructive notice of the filing requirement; 2) the movant's diligence in pursuing his rights; 3) an absence of prejudice to the non-movant; and 4) the movant's reasonableness in remaining ignorant of the filing

requirement. *Ibid.* All factors need not be present, but the third factor alone cannot justify tolling. *Vroman v. Brigano,* 346 F.3d 598, 601 (6th Cir.2003).

Merrill Lynch urges that the deference given to an arbitrator's decision forecloses equitable tolling. *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 175–77 (2d Cir.1984) (in dictum, "role of arbitration as a mechanism for speedy dispute resolution disfavors delayed challenges to the validity of an award"); *accord Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir.1986) (dictum); *see also Piccolo v. Dain, Kalman & Quail, Inc.,* 641 F.2d 598, 601 (8th Cir.1981) (due diligence exception to limitations period "doubtful"). Defendants, on the other hand, remind us that courts "should, if anything be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

This court has not had occasion to decide whether arbitration vacatur motions are subject to equitable tolling. Merrill Lynch's proposed extension of the oft-cited general policy of deference to arbitration may be unwarranted. It is clear that the FAA reflects Congressional approval of the speed and finality of arbitration; but Congress enacted the statute, not a policy. *See Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.,* 485 U.S. 495, 501, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988) ("unenacted approvals, beliefs and desires are not laws.") Where the FAA is silent, the courts must decide how to apply equitable rules in FAA-related court proceedings.

The speed and finality of arbitration come at the cost of procedural niceties, but this tradeoff is considered merely a choice of forum because it does not impair the arbitrants' substantive statutory rights. *Mitsubishi Motors Corp. v. Soler,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Arbitrator bias, however, is grounds for vacatur precisely because it makes that forum unable to provide a "fundamentally fair hearing." *Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 278 F.3d 621, 625 (6th Cir.2002); *and see Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 30–31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (arbitration is adequate forum for resolution of discrimination claims because disclosure rules and 9 U.S.C. § 10(a) guard against bias). The general pro-arbitration policy relies on the assumption that the forum is fair, and therefore cannot justify special deference to arbitration outcomes in the face of a colorable claim that the forum was unfair in a particular case. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (arbitrator's "honest judgment" may not be reviewed, but "[o]f course, decisions procured by the parties through fraud or through the arbitrator's dishonesty need not be enforced").

On the other side of the equation, the possibility that awards may on occasion be belatedly challenged does not seem to strongly invoke the policy concern for speed and finality. The procedure would remain just as speedy, since awards would not be stayed between the end of arbitration and the belated motion, and rarely if ever stayed upon filing of the motion. Finality, too, is only very slightly affected, because the bar for equitable tolling is quite high. *See, e.g., Hobet Mining, Inc. v. United Mine Workers,* 877 F.Supp. 1011, 1018 (S.D.W.Va.1994). And an arbitral loser cannot effectively delay payment by threatening to file an unfounded vacatur motion, because the FAA provides for

enforcement motions in the event of such foot-dragging tactics.

However, we need not resolve this issue today, because the facts of this case clearly do not merit equitable tolling. The first and fourth *Andrews* factors weigh against Defendants, who were well aware of their time limit, and the third factor weighs against Merrill Lynch. The second factor, Defendants' diligence, may be dispositive in such cases. *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). And Defendants were not diligent.

Between the appointment of the panel in June 2001 and the beginning of hearings in January 2002, Defendants had seven months to discover that one of their own attorneys had prior contacts with Mr. Zeiser in the Common Pleas Lawsuit. Moreover, a diligent inquiry into the arbitration panel should surely have included a name-based search on the chairman's local court's website. This court will not encourage strategic negligence by arbitrants.

Defendants assert that they have now searched for records of the Discrimination Charge against Zeiser, and found none, so they cannot be held accountable for failing to uncover the matter earlier. But Defendants clearly failed to research Zeiser diligently in general, and so did not come to this equitable table with clean hands.

Defendants argue that Zeiser purposely lulled them into a false sense of security by disclosing his favorable connection to Ulmer, Berne. Merrill Lynch asserts that Zeiser in all likelihood did not know that the Common Pleas Lawsuit attorney was an Ulmer, Berne associate, and did not report the discrimination charge because he thought of the dispute between Merrill Lynch and Defendants as an unfair-competition matter. More to the point, whether Zeiser was a scheming manipulator or an innocent, he is not, and is not colluding with, the adverse party in this case. His degree of fault, if any, cannot tilt the equitable balance between the litigants. Defendants should not have been lulled by such slight subterfuge, if subterfuge it was. Defendants assert that encouraging full arbitrator disclosure is a weighty matter of public policy, but even if such concerns could in some cases help justify tolling, they are not strongly impacted by Defendants' slight and speculative allegations against Zeiser. Defendants have failed to make out a case for equitable tolling.

## III

Defendants filed too late. The statutory period cannot be equitably tolled, because they failed to safeguard their rights diligently. The district court's denial of their motion is therefore affirmed.

HOOD, District Judge, concurring in the majority's conclusion.

I concur in the outcome of the majority opinion. However, it is my opinion that equitable tolling is applicable to the three month limitation period under 9 U.S.C. § 12. The Supreme Court has long held that the doctrine of equitable tolling "is read into every federal statute of limitations." *Holmberg v. Armbrecht*, 327 U.S. 280, 397, 66 S.Ct. 532, 585, 90 L.Ed. 743 (1946); *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982); *Hallstrom v. Tillamook County*, 493 U.S. 20, 27, 110 S.Ct. 304, 309, 107 L.Ed.2d 237 (1989); and *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). This court has recognized that the three months limitation period in 9 U.S.C. § 12 is a "statute of limitations." *See Occidental Chemical Corp. v. Int'l*

*Chemical Workers Union,* 853 F.2d 1310, 1313 (6th Cir.1988) and *Smart v. Ellis Trucking Co., Inc.,* 580 F.2d 215, 219 (6th Cir.1978). In applying the factors set forth in *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.1988), I agree with the majority opinion that Defendants have failed to make out a case for equitable tolling.