**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1463

WILLIAMSON FARM,

Plaintiff - Appellant,

v.

DIVERSIFIED CROP INSURANCE SERVICES, a/k/a CGB Diversified
Services, Inc.,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at
Raleigh. James C. Dever III, District Judge. (5:17-cv-00513-D; 5:16-mc-00018-D)

Argued: December 13, 2018                    Decided: February 27, 2019

Before KEENAN, FLOYD, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge
Keenan and Judge Floyd joined.

**ARGUED:** Matthew William Buckmiller, STUBBS & PERDUE, P.A., Raleigh, North
Carolina, for Appellant. Roy Jefferson Allen, HUNT ROSS & ALLEN, Clarksdale,
Mississippi, for Appellee. **ON BRIEF:** Derek M. Crump, BROWN, CRUMP,
VANORE & TIERNEY, L.L.P., Raleigh, North Carolina, for Appellee.

THACKER, Circuit Judge:

In this case, Williamson Farm ("Appellant") challenges the district court's decision to vacate an arbitration award that Appellant won against Diversified Crop Insurance ("Appellee"), a private insurance company that sold federal crop insurance policies to Appellant. Appellant asserts that the district court erred in denying its motion to confirm the arbitration award and granting Appellee's motion to vacate on the basis that the arbitrator exceeded her powers.

Despite the strong presumption in favor of confirming arbitration awards pursuant to the Federal Arbitration Act ("FAA"), we hold that Appellee met its heavy burden to prove that the arbitrator exceeded her powers by awarding extra-contractual damages, contrary to both the policy and binding authority from the Federal Crop Insurance Corporation ("FCIC"). Therefore, we affirm.

I.

A.

*Background on the Federal Crop Insurance Program*

The policies at issue in this case are federal crop insurance policies, which Appellee sold pursuant to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. §§ 1501–1524, 1531, and accompanying regulations issued by the FCIC. These policies are not typical private insurance agreements, so a brief discussion of the federal government's role in crop insurance agreements is necessary.

The federal crop insurance program provides farmers and agricultural entities in the United States with crop insurance protection, a venture that was considered too risky

2

for traditional private insurers when the FCIA was enacted in 1938. As the Supreme Court explained, "the Government engaged in crop insurance as a pioneer. Private insurance companies apparently deemed all-risk crop insurance too great a commercial hazard." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 383 n.1 (1947).

To provide this protection to farmers, the FCIA established the FCIC, a government corporation within the United States Department of Agriculture's Risk Management Agency that administers the federal crop insurance program. 7 U.S.C. § 1503. The FCIC does not directly issue crop insurance policies to farmers. Instead, it relies on "approved insurance providers"[1] -- private insurers such as Appellee -- to issue federal crop insurance policies to farmers like Appellant. 7 U.S.C. § 1502(b)(2). Then, when certain eligibility conditions are met, the FCIC reinsures the approved insurance providers' losses and reimburses their administrative and operating costs.

In order to qualify for reinsurance through the FCIC, approved insurance providers must comply with the FCIA and the accompanying regulations issued by the FCIC governing the sale, issuance, and servicing of federal crop insurance policies. 7 C.F.R. § 400.168; *see also Felder v. Fed. Crop Ins. Corp.*, 146 F.2d 638, 640 (4th Cir. 1944); *Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1284 (11th Cir. 2014). Accordingly, "even though the crop insurance policy is between the farmer and an approved insurance

---

[1] Pursuant to the FCIA, "[t]he term 'approved insurance provider' means a private insurance provider that has been approved by the [FCIC] to provide insurance coverage to producers participating in the Federal crop insurance program established under this subchapter." 7 U.S.C. § 1502(b)(2).

3

provider," the FCIA "establishes the terms and conditions of insurance." *Davis*, 762 F.3d at 1284 (citation omitted).

Indeed, all approved insurance providers issue a uniform policy drafted by the FCIC known as the "Common Crop Insurance Policy," the text for which is provided at 7 C.F.R. § 457.8. Both policies at issue in this case mirrored the Common Crop Insurance Policy. Additionally, the FCIC sets premium rates for each county and crop insured, subsidizes and receives premiums, and pays claims. In short, the FCIC is extensively involved in and exerts control over all aspects of the federal crop insurance program.

The Farm Service Agency ("FSA"), another agency within the Department of Agriculture, works with the Risk Management Agency and the FCIC to implement the federal crop insurance program through FSA's network of state and county field offices. As relevant to this case, insureds and approved insurance providers are required to submit program eligibility, acreage reporting, and other necessary forms to their local FSA office in order to receive federal crop insurance coverage through the FCIC.

B.

*Appellant's Underlying Policy Claims*

This case centers on two policies issued by Appellee to insure Appellant's 2013 crops: (1) the Richmond County Policy; and (2) the Montgomery County Policy. Under

4

the Richmond County Policy, Appellee listed Farm Number 2172.[2]   Under the Montgomery County Policy, Appellee listed Farm Numbers 1870 and 4168.

For many years, Appellant purchased its crop insurance through insurance agent Lynn Saintsing, until Saintsing sold his agency to Appellee in 2012.[3]   During his time as Appellant's insurance agent, Saintsing's regular practice was to help Appellant complete the necessary forms and submit them to the proper FSA office to insure Appellant's farms.

It was not unusual for a farm located in one county to be administered by an FSA office in another county, based on the owner's preferences or if the farm's county did not have an FSA office.  Such was the case with Appellant's Farm 2172, which was located in Montgomery County.  In 1996, the Montgomery County FSA office closed, and administration of Farm 2172 shifted to Richmond County.  Accordingly, since 1996, Farm 2172 had been listed on forms filed with the FSA office in Richmond County even though it was located in Montgomery County.  Saintsing was aware of this, since he helped Appellant fill out the forms and prepare maps of the farms.

---

[2] Farm numbers, which are assigned by the FSA, identify an insured's farms and are used in connection with federal crop insurance policies and FSA forms.

[3] It is not clear from the record how many years Appellant purchased its crop insurance through Saintsing, but Appellant's brief notes that it has farmed on this property "for decades" and purchased its crop insurance through Saintsing "[d]uring much of this time."  Appellant's Br. 3.

Prior to Appellee's acquisition of Saintsing's insurance agency, Saintsing issued Appellant a single policy that covered all of Appellant's crops regardless of the county in which the farm was located.

1.

*Crop Loss Claim: Farm 2172*

The trouble began for Appellant after Saintsing sold his business to Appellee in 2012. Unlike the single policy previously issued by Saintsing, Appellee issued Appellant separate policies for each county in which a farm was geographically located, regardless of where the farm was administered. Saintsing -- then an agent for Appellee -- helped Appellant prepare the necessary forms to be submitted to the FSA. But on those forms, Saintsing listed Farm 2172 on the Richmond County Policy (where it was administered), rather than the Montgomery County Policy (where it was geographically located).

In 2013, Appellant experienced crop loss due to deer on Farm 2172 and expected this loss to be covered under its crop insurance policy. Therefore, Appellant filed a claim for the loss with Appellee. However, Appellee denied the claim "on the technicality that Farm 2172, located in Montgomery County, was listed on [forms] filed with the FSA in Richmond County and was therefore listed on the wrong policy." J.A. 13.[4] As noted, Saintsing had assisted Appellant in completing these forms and facilitated their filing with the FSA.

---

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

6

2.

*Prevented Planting Claim: Farms 1870 and 4168*

Appellant also seeks recovery for a prevented planting claim[5] under the Montgomery County Policy.  The summer of 2013 was excessively rainy.  As a result, Appellant was unable to plant on Farms 1870 and 4168.

During the period that Appellant was unable to plant, another of Appellee's agents, Jason Nifong, visited Appellant's farmland to aid Appellant in preparing its FSA forms.  During this visit, Nifong advised Appellant that it could file a prevented planting claim as a result of the rainy weather.  Following Nifong's visit, Appellant chose to file a prevented planting claim and did not attempt to plant on these farms.

However, in preparing the FSA forms, Nifong failed to note the prevented planting acres on the correct form, and he did not explain to Appellant that failure to report the acres on that specific form would bar the prevented planting claim.  Ultimately, Appellee denied Appellant's claim based on this failure to report.

C.

*Arbitration*

Appellant sought arbitration pursuant to Section 20(a) of the policy based on Appellee's denials of its crop loss and prevented planting claims.  *See* J.A. 207, § 20(a)

---

[5] When certain requirements are met, a prevented planting claim allows a policyholder to recover when an insured cause of loss that is general to the surrounding area, such as excessive rain, prevents the policyholder (as well as other producers in the area) from planting crops on eligible acres.

("If you and we fail to agree on any determination made by us . . . the disagreement must be resolved through arbitration . . . .").

1.

*Crop Loss Claim: Farm 2172*

As to Appellant's crop loss claim for Farm 2172, the arbitrator determined, "[t]he lack of coverage for Farm 2172 indisputably arose from [Appellee's] decision to issue county by county policies and its failure, and that of its agents who knew where these farms were actually located . . . , to correctly list the farms for crop insurance purposes." J.A. 14. The arbitrator continued, "I conclude that [Appellee] failed to comply with the terms of [the policy] and that failure resulted in the loss to [Appellant]. [Appellee] left [Appellant] effectively uninsured for crop year 2013 as to Farm 2172." *Id.* The arbitrator further concluded that Appellee engaged in negligence, breach of fiduciary duty, and constructive fraud. As a result, she awarded Appellant $97,692.39 for Appellee's "breach of [the policy] and the failure to pay the claim," damages which she trebled because she concluded that Appellee violated the North Carolina Unfair and Deceptive Trade Practices Act. *Id.* Lastly, finding that Appellee failed to attempt to reasonably settle the claim, the arbitrator awarded Appellant $54,368.87 in attorneys' fees pursuant to North Carolina law.

2.

*Prevented Planting Claim: Farms 1870 and 4168*

As for Appellant's prevented planting claim for Farms 1870 and 4168, the arbitrator similarly determined that Appellee's agent was at fault for failing to report the

8

acres on the correct FSA form, and that Appellee's "actions or lack of action left [Appellant] effectively uninsured for crop year 2013 as to Farms [1870][6] and 4168." J.A. 15. Accordingly, the arbitrator concluded, "I award the amount of $77,668.59 to [Appellant] for the breach of [the policy] and the failure to pay the claim. I also conclude that [Appellee] engaged in negligence, breach of fiduciary duty and constructive fraud." *Id.* As with the crop loss claim for Farm 2172, the arbitrator trebled damages pursuant to the North Carolina Unfair and Deceptive Trade Practices Act and awarded Appellant $44,483.63 in attorneys' fees pursuant to North Carolina law.

3.

*Arbitration Award*

After all was said and done, the total arbitration award to Appellant was $97,692.39 for the crop loss claim for Farm 2172 and $77,668.59 for the prevented planting claim for Farms 1870 and 4168 (both of which were to be trebled), $98,852.50 in attorneys' fees, and $14,994 in reimbursement for arbitration costs and fees. According to Appellant, this amounted to a total arbitration award of $639,929.44.

D.

*District Court's Decision*

On May 12, 2016, Appellant filed a motion to confirm the arbitration award in the United States District Court for the Eastern District of North Carolina. And, on June 29,

---

[6] The arbitrator's decision occasionally refers to Farm 1870 as Farm 1872 or 1879. Based on the record, these references appear to be in error.

9

2016, Appellee filed a competing motion to vacate the arbitration award, asserting that the arbitrator exceeded her authority. Additionally, Appellee argued that Appellant failed to obtain a determination from the FCIC that Appellee failed to comply with the insurance policies or FCIC procedures, which it asserted was a prerequisite for the district court to confirm the award.

On July 12, 2016, the district court requested an amicus brief from the FCIC addressing whether the arbitrator exceeded her authority and whether Appellant was required to obtain an FCIC determination before the district court could confirm the arbitration award. The FCIC filed its amicus brief on August 24, 2016, taking the position that the arbitrator exceeded her authority by (1) awarding contractual damages not covered by any policy; (2) awarding extra-contractual damages and attorneys' fees; (3) failing to obtain and follow binding FCIC interpretations, issued in the form of Final Agency Determinations ("FADs"); and (4) failing to obtain an FCIC determination prior to any extra-contractual damages or attorneys' fees being awarded during judicial review.

On March 26, 2018, the district court granted Appellee's motion to vacate and denied Appellant's motion to confirm the arbitration award, concluding that the arbitrator exceeded her powers by (1) impermissibly interpreting the policy rather than obtaining an interpretation from the FCIC; and (2) awarding extra-contractual damages. Appellant timely appealed on April 25, 2018.

We review the district court's legal rulings regarding confirmation or vacation of an arbitration award de novo and the district court's factual findings, if any, for clear error. *Norfolk S. Ry. Co. v. Sprint Commc'ns Co.*, 883 F.3d 417, 422 (4th Cir. 2018).

Pursuant to the FAA, "any judicial review of an arbitration award must be an extremely narrow exercise." *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 351 (4th Cir. 2008). There is a strong presumption in favor of confirming arbitration awards under the FAA, and any party seeking to overturn an arbitration award faces a "heavy burden." *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007). As we have stated, "in reviewing such an award, 'a district or appellate court is limited to determin[ing] whether the arbitrators did the job they were told to do -- not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" *Id.* (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994)). Indeed, "an arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion." *Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Commc'ns Int'l Union*, 973 F.2d 276, 281 (4th Cir. 1992) (internal quotation marks omitted).

The FAA provides that a court may only vacate an arbitration award on one of the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

11

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Three S Del.*, 492 F.3d at 527 (citing 9 U.S.C. § 10(a)). "The permissible common law grounds for vacating such an award 'include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law.'" *Id.* (quoting *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006)).

## III.

Appellant asserts that the district court erred in this case by vacating the arbitration award. Appellant argues that the arbitrator did not exceed her powers by awarding extra-contractual damages and attorneys' fees. In the alternative, Appellant argues that even if the arbitrator exceeded her powers in part, we should nevertheless confirm the arbitration award of contract damages, which were within the arbitrator's authority to award pursuant to the policy. We address each argument in turn.

### A.

### *Extra-Contractual Damages*

The district court vacated the arbitration award after determining that the arbitrator exceeded her powers by awarding prohibited extra-contractual damages and attorneys'

12

fees.   Appellant asserts that the arbitrator acted within her authority in rendering the award because the arbitrator concluded that Appellee breached the policy, and it was within her power to award extra-contractual damages.

1.

*Policy Interpretation*

We turn first to whether the policy unambiguously prohibits the arbitrator from awarding extra-contractual damages.  In arguing that it does, Appellee relies primarily on Sections 20(h) and 20(i) of the policy.  These provisions state as follows:

> (h) Except as provided in section 20(i), **no award** or settlement in mediation, **arbitration**, appeal, administrative review or reconsideration process or judicial review **can exceed the amount of liability established or which should have been established under the policy**, except for interest awarded in accordance with section 26.

> (i) **In a judicial review only**, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us **only if** you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled.

J.A. 209, § 20(h)–(i) (emphases supplied).

Appellee argues that these provisions unambiguously state that the arbitrator cannot award extra-contractual damages, and such damages may only be awarded by a court upon judicial review and after obtaining an FCIC determination that the agent or loss adjuster failed to comply with the terms of the policy.  Making the same argument in its amicus brief submitted before the district court, the FCIC explained:

13

According to the clear language of the policy, any extra-contractual damages, including damages arising from state claims, were only available after this Court was asked to review the arbitrator's award. *See* 7 C.F.R. § 457.8, ¶ 20(i). As noted by FCIC, any extra-contractual claims (i.e. negligence, breach of fiduciary duty, constructive fraud, unfair and deceptive practices) and attorneys' fees are limited solely to instances where FCIC has determined the insurance provider violated its policies and procedures and such violation had a monetary impact on the payment of the claim. *See* FCIC Response to Comments, 69 Fed. Reg. 48652-01, 48717 (Aug. 10, 2004). Thus, the plain and unambiguous terms of section 20(i) of the policy (7 C.F.R. § 457.8, ¶ 20(i)), together with the plain and unambiguous language of 7 C.F.R. § 400.176(b) and 7 C.F.R. § 400.352(b)(4), unequivocally dictate that a party can only be awarded extra-contractual damages and attorneys' fees upon petitioning this Court for review of the arbitrator's award and then only after obtaining a determination from FCIC.

J.A. 232–33.

In rendering the award, however, the arbitrator interpreted these provisions differently. The arbitrator concluded:

Section 20(i) does not in fact state that the arbitrator may not award attorneys' fees or punitive, compensatory or other damages. Instead it appears to impose a type of condition precedent to the ultimate enforceability of such an award by a court. Moreover, if the provision has the effect [Appellee] claimed, the arbitrator would have little jurisdiction to decide anything. That plainly cannot be the case. Notably, the Policies are silent on timing, such that the condition precedent of FCIC determination could be satisfied post-award but prior to enforcement in court.

In addition, Section 20(h) does not expressly exclude any theories of liability (such as fraud) or types of damages; instead it says that no award can exceed the amount of liability established under the policy. It does not expressly exculpate insurers from their improper conduct such as fraud

14

> or breach of fiduciary duty, conduct that can trigger liability
> beyond liability for breach of contract.

J.A. 10.

But it does not matter if these policy provisions are as unambiguous as Appellee (and the FCIC) claims or if the arbitrator's alternative interpretation is reasonable. This is because even under the arbitrator's explanation, these provisions are ambiguous at best. As the policy makes clear, the arbitrator was required to obtain and apply the FCIC's interpretation of any ambiguous policy provision, and the arbitrator could not substitute her own interpretation for that of the FCIC.

As the district court correctly pointed out, "[i]n cases involving federally reinsured crop insurance, the insurance contract forms only one part of the agreement between the parties. The statutes and regulations associated with the federal crop insurance scheme also limit the arbitrator's authority." J.A. 271 (citing *Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1284–85 (11th Cir. 2014)). Significantly, Section 20(a)(1) of the policy -- *the very same section that provides for arbitration* -- states that if there is a dispute that "in any way involves a policy or procedure interpretation," the parties "*must* obtain an interpretation from FCIC." J.A. 208, § 20(a)(1) (emphasis supplied). The FCIC's FADs are "binding on all participants in the Federal crop insurance program," including arbitrators. 7 C.F.R. § 400.765(c); *see also* J.A. 208, § 20(a)(1)(i) ("Any interpretation by FCIC will be binding in any mediation or arbitration."). Therefore, the failure to obtain a required FCIC interpretation "will result in the nullification of any agreement or

15

award." J.A. 208, § 20(a)(1)(ii). In short, both the policy and FCIC regulations provide that only the FCIC -- and not the arbitrator -- may interpret the policy.

In rendering the award here, the arbitrator pushed back against this restriction by noting that if the arbitrator could not interpret the meaning of policy provisions, "the arbitrator would have little jurisdiction to decide anything." J.A. 10. Indeed, the unusual world of federal crop insurance does, in fact, appear to leave very little decision making authority to the arbitrator. But as counsel for Appellee stated during oral argument in this case, crop insurance "takes everything you know about insurance and turns it on its head." Oral Argument at 19:40–49, *Williamson Farm v. Diversified Crop Ins. Servs., Inc.*, No. 18-1463 (4th Cir. Dec. 13, 2018), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments (hereinafter "Oral Argument").

2.

*The Distinction Between FCIC Interpretations and FCIC Determinations*

In response to Appellee's argument that the arbitrator was required to obtain an FCIC interpretation of disputed policy provisions, Appellant asserts, "if an FCIC determination is required before an arbitrator can award monies then the arbitration process is a complete waste of time with no meaning." Appellant's Br. 24. Appellant further asserts that, in any event, it did, in fact, seek an FCIC determination and was told that the FCIC would not render an opinion until after arbitration.

In both arguments, Appellant conflates the obligation to obtain an FCIC *interpretation of disputed provisions of the policy* pursuant to Section 20(a)(1) -- a requirement in any arbitration where the meaning or application of policy provisions are

16

at issue -- with the requirement to obtain an FCIC *determination that there was a failure to comply with the terms of the policy* prior to obtaining attorneys' fees or extra-contractual damages during judicial review pursuant to Section 20(i). FCIC *interpretations* and FCIC *determinations*, as these terms are described in the policy, are not the same thing.

a.

*When an FCIC Determination is Required*

As to Appellant's first argument, an FCIC *determination* that there was a failure to comply with the terms of the policy is not required "before an arbitrator can award monies." Appellant's Br. 24. Pursuant to Section 20(i) of the policy, such determinations are only required (1) during judicial review (after arbitration is completed); and (2) only when an insured is seeking extra-contractual damages. As discussed below, binding FCIC FADs make clear that arbitrators cannot award extra-contractual damages; accordingly, arbitrators do not require such an FCIC determination in order to render their award.[7] Arbitrators do, however, require an FCIC *interpretation* before rendering an award based on disputed policy language.

---

[7] In its reply brief, Appellant offers a similar argument that Appellee's interpretation of 7 C.F.R. § 400.352 -- which preempts state and local laws and regulations except where the FCIC makes a determination that the agent or loss adjuster failed to comply with the policy -- "would bar recovery of any damages without an FCIC determination," including compensatory damages. Appellant's Reply Br. 2. Because the FCIC has established that arbitrators cannot award damages based on state law claims and FCIC determinations are only required during judicial review involving extra-contractual damages, this argument is irrelevant as to the arbitration award.

17

b.

*Appellant Requested an FCIC Determination, Not an FCIC Interpretation*

As to Appellant's second argument, Appellant did not request an FCIC interpretation -- it requested an FCIC determination. Again, an FCIC *interpretation* of the meaning of disputed policy provisions is a different request -- one which arises at a different time and in a different proceeding -- than an FCIC determination that an agent failed to comply with the terms of the policy. To comply with Section 20(a)(1) of the policy, what Appellant (or the arbitrator) needed to request during the arbitration, but did not, was an FCIC interpretation of the meaning of the disputed policy provisions. Appellant's premature request for an FCIC determination that there was a failure to comply with the terms of the policy, pursuant to Section 20(i), is of no consequence to the arbitration award.[8]

The arbitrator's explanation as to what specific policy provisions mean (particularly to the extent they were disputed issues in the arbitration) can only be viewed as her *interpretation* of the policy. *See, e.g.*, J.A. 10 ("Section 20(i) does not in fact state that the arbitrator may not award attorneys' fees or punitive, compensatory or other damages. Instead it appears to impose a type of condition precedent to the ultimate

_____

[8] We note that our decision in this case does not address whether a claimant could recover purely tort damages against a private insurance company without such an FCIC determination where misrepresentations or negligence on the part of the insurance agent before the policy was issued left the claimant effectively uninsured under the federal crop insurance program. Here, Appellant sought contractual damages and participated in arbitration pursuant to the insurance policy.

enforceability of such an award by a court. Moreover, if the provision has the effect [Appellee] claimed, the arbitrator would have little jurisdiction to decide anything. That plainly cannot be the case."). By not obtaining an FCIC interpretation to resolve the issue but instead interpreting the provisions herself, which was not in her authority to do, the arbitrator exceeded her powers.

3.

*Binding FCIC Authority*

The arbitrator was obligated to follow any FADs previously issued by the FCIC. *See* J.A. 208, § 20(a)(1)(i), (iii) ("Any interpretation by FCIC will be binding in *any* mediation or arbitration . . . . An interpretation by FCIC of a policy provision is considered a determination that is a matter of general applicability." (emphasis supplied)). And the FCIC has addressed whether arbitrators may award extra-contractual damages more than once already. Each time, the FCIC has made clear that arbitrators do not have the authority to award such damages. Rather, extra-contractual damages and attorneys' fees may only be awarded by the court reviewing an arbitrator's decision. For instance, Appellant does not dispute that FAD-193, issued on October 21, 2013, states in relevant part:

> [T]he reference to "judicial review only" [in Section 20(i)] is to clarify that *such [extra-contractual] damages can only be sought during an appeal to the Courts, after an FCIC determination has been obtained, and cannot be awarded in arbitration*. To obtain a determination that will enable the insured to recoup attorney[s'] fees, expenses, or damages from the [approved insurance provider], the insured must send a request for determination to the [Risk Management

19

Agency] Deputy Administrator of Compliance after the insured has filed an appeal for judicial review.

J.A. 240 (emphasis supplied); Appellee's Br. 12.

Prior to this, the FCIC also addressed the issue of extra-contractual damages in FAD-99, issued on May 4, 2009, which states, in relevant part, "it is only in a judicial review that producers can recover attorneys' fees or other expenses, or any punitive, compensatory or any other damages from insurance providers." J.A. 241.

Pursuant to Section 20(a)(1)(i) of the policy, these previously issued FADs -- and the conclusion that arbitrators cannot award extra-contractual damages pursuant to Section 20(i) -- were binding upon the arbitrator in this case.

4.

*The Arbitrator Exceeded Her Powers*

Accordingly, the arbitrator exceeded her powers by both (1) interpreting the policy herself without obtaining an FCIC interpretation for the disputed policy provisions; and (2) awarding extra-contractual damages, which the FCIC has conclusively stated in multiple FADs cannot be awarded in arbitration and can only be sought through judicial review. Thus, Appellee met "the heavy burden" to vacate an arbitration award pursuant to the FAA. *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010); *see also* 9 U.S.C. § 10(a)(4).

B.

*Contractual Damages*

In the alternative, Appellant argues that even if the arbitrator exceeded her powers by awarding extra-contractual damages and attorneys' fees, we should nevertheless confirm the arbitration award in part based on contract damages, which were within the arbitrator's authority to award pursuant to Section 20 of the policy.

Assuming that the arbitrator also awarded contractual damages,[9] it is impossible to tell from the arbitration award what amount may have stemmed from contractual damages and what amount was extra-contractual. For example, in the award as to Appellant's crop loss claim for Farm 2172, the arbitrator stated:

> The lack of coverage for Farm 2172 indisputably arose from [Appellee's conduct] . . . . The failure of [Appellee] to properly handle this and advise [Appellant] breached [Appellee's] fiduciary duty to [Appellant.]
>
> I conclude that [Appellee] failed to comply with the terms of [the policy] and that failure resulted in the loss to [Appellant.] [Appellee] left [Appellant] effectively uninsured for crop year 2013 as to Farm 2172. Accordingly, I award the amount of $97,692.39 to [Appellant] for the breach of [the policy] and the failure to pay the claim. I conclude that [Appellee] engaged in negligence, breach of fiduciary duty and constructive fraud.
>
> In addition, [Appellant] has established that [Appellee] owed duties distinct and separate from the duties it owed under the parties' contracts; further, [Appellant] has

_____

[9] Notably, the arbitrator concluded that Appellee "left [Appellant] effectively uninsured for crop year 2013," J.A. 14, 15, which calls into question how Appellee could breach a contract that did not exist.

21

established that [Appellee's] breach of those duties was aggravated by several factors. Accordingly, I conclude that [Appellee] engaged in unfair and deceptive practices in or affecting commerce . . . . The facts show recklessness and wanton disregard by [Appellee], i.e., more than a mere breach of contract, warranting an award of treble damages under [North Carolina state law.]

J.A. 14.

Although the arbitrator concluded that Appellee breached the contract, the arbitrator also found Appellee liable for extra-contractual damages, including negligence and breach of fiduciary duty. Since the arbitrator only provided a single amount of damages rather than a breakdown of the award by contract and noncontract claims, we have no way to distinguish what amount the arbitrator may have awarded for contractual damages (which were within the arbitrator's authority to award) and what amount the arbitrator awarded for extra-contractual damages (which, for the reasons explained above, the arbitrator exceeded her authority in awarding).

Of note, there is no support in the record for Appellant's assertion at oral argument that the arbitrator awarded $97,692.39 in contract damages for the crop loss claim while extra-contractual damages were awarded in the form of trebled damages and attorneys' fees. *See* Oral Argument at 14:51–16:04. To the contrary, the structure of the arbitration award suggests that the arbitrator intended the award of trebled damages based on Appellee's "recklessness and wanton disregard" to be in addition to the contractual and extra-contractual damages awarded for breach of contract, negligence, breach of fiduciary duty, and constructive fraud. J.A. 14 ("I conclude that [Appellee] engaged in negligence, breach of fiduciary duty and constructive fraud. *In addition*, . . . [t]he facts show

22

recklessness and wanton disregard by [Appellee.]" (emphasis supplied)). The same is true regarding the arbitration award for Appellant's prevented planting claim for Farms 1870 and 4168. *See* J.A. 15 ("I also conclude that [Appellant] has engaged in negligence, breach of fiduciary duty and constructive fraud. *In addition*, as to Farms [1870] and 4168, . . . [t]he facts show recklessness and wanton disregard by [Appellant.]" (emphasis supplied)).

Accordingly, even to the extent the arbitrator awarded damages for breach of contract on either policy (as opposed to extra-contractual damages), the entire award must be vacated.

## IV.

For these reasons, the judgment of the district court is

*AFFIRMED.*

23