RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BACHMAN SUNNY HILL FRUIT FARMS, INC.,

*Petitioner-Appellant,*

*v.*

PRODUCERS AGRICULTURE INSURANCE COMPANY,

*Respondent-Appellee.*

┐
│
│
│
│ No. 21-2868
│
│
│
│
┘

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:20-cv-01117—Janet T. Neff, District Judge.

Argued: July 20, 2022

Decided and Filed: January 11, 2023

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Mark Granzotto, MARK GRANZOTTO, P.C., Berkley, Michigan, for Appellant. Josephine A. DeLorenzo, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** Mark Granzotto, MARK GRANZOTTO, P.C., Berkley, Michigan, John D. Tallman, JOHN D. TALLMAN, PLC, Grand Rapids, Michigan, for Appellant. Josephine A. DeLorenzo, Elaine M. Pohl, Olivia M. Paglia, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee.

───────────────

## OPINION

───────────────

JOHN K. BUSH, Circuit Judge. When farmers and private insurers enter a federally reinsured crop-insurance contract, they agree to common terms set by the Federal Crop Insurance

Corporation (FCIC).  One such term requires the parties to arbitrate coverage disputes.  In those proceedings, the arbitrator must defer to agency interpretations of the common policy.  Failure to do so results in nullification of the arbitration award.

Bachman Sunny Hill Fruit Farms lost at an arbitration with its insurer, Producers Agriculture Insurance Company.  Bachman Farms blames its loss on the arbitrator allegedly engaging in impermissible policy interpretation.  On that ground, the insured petitioned a federal district court to nullify the arbitration award.  The petition to nullify, however, did not comply with the substance or time limits of the Federal Arbitration Act (FAA).  Those FAA requirements govern this challenge to an arbitration award in federal court, as we explain below. We therefore affirm the district court's dismissal of Bachman Farms's petition to nullify.

I.

Bachman Farms grows apples in central Ohio.  Like hundreds of thousands of other farms, it protected its 2017 crop with federally reinsured crop insurance.  *See* Nat'l Agric. Stats. Serv., U.S.D.A., AC-17-A-51, *2017 Census of Agriculture* 17 tbl.8 (2019) (counting 380,236 farms enrolled in crop-insurance programs in 2017).  It purchased two policies from Producers Agriculture to cover that year's crop.

The federal government, through the FCIC, has been in the business of providing crop insurance directly to farmers since the 1930s.  *See Ackerman v. U.S. Dep't of Agric.*, 995 F.3d 528, 529 (6th Cir. 2021).  And ever since Congress enacted the Federal Crop Insurance Act of 1980, the FCIC and its administrator, the Risk Management Agency (RMA), have also reinsured policies offered to farmers by private insurers.  *Id.*  The federal reinsurance program allows the FCIC to provide reimbursement, subsidies, and reinsurance for approved crop-insurance policies. *See* Stephanie Rosch, Cong. Rsch. Serv., R46686, *Federal Crop Insurance: A Primer* 25 (2021).

These federally reinsured crop-insurance policies "are not typical private insurance agreements."  *Williamson Farm v. Diversified Crop Ins. Servs.*, 917 F.3d 247, 249 (4th Cir. 2019).  Yes, each contract is "between a farmer and an insurance provider," but "the FCIC determines the terms and conditions" of the policy.  *Balvin v. Rain & Hail, LLC*, 943 F.3d 1134, 1136 (8th Cir. 2019).  In fact, the terms of the insurance Bachman Farms bought from Producers

Agriculture—the Common Crop Insurance Policy (common policy)—are set out in full in the Code of Federal Regulations. *See* 7 C.F.R. § 457.8 (hereinafter CCIP). Those terms governed the parties' relationship and gave rise to this dispute.

At bottom, this appeal is about the dispute-resolution mechanisms Bachman Farms and Producer Agriculture agreed to in the common policy. The dispute began when Bachman Farms sought indemnity from Producers Agriculture after hail damaged its apple crop. According to the insured, Producers Agriculture paid for only a small part of its claim. Allegedly, that lesser payout resulted from two mistakes the insurance adjuster made when he handled the claim. His first mistake was his failure to inform Bachman Farms it could seek an independent appraisal of its crop. Adjusters must provide that notice, according to the apple loss adjustment standards handbook. And his second mistake was his directive that Bachman Farms "pack out" its apple crop, a costly harvesting process. This second mistake conflicted with another directive, in the loss adjustment manual standards handbook, which says adjusters are *not* supposed to tell an insured farm whether to harvest its crop.

Dissatisfied with its payout from the claim, Bachman Farms brought an arbitration against Producers Agriculture in 2020. After two days of testimony, the arbitrator entered an award for Producers Agriculture on March 26. His reasoning rested on the two handbooks Bachman Farms accused the insurance adjuster of ignoring. According to the arbitrator, the handbooks were not binding parts of the insurance contract, so even if the adjuster failed to abide by them, that failure did not breach the contract.

But Bachman Farms claims the arbitrator ventured outside his authority when he sided with Producers Agriculture. Under the common policy, an arbitrator's role is limited: "if the dispute in any way involves a policy or procedure interpretation," the parties "must obtain an interpretation from FCIC[.]" CCIP § 20(a)(1). Interpretations by that agency bind the arbitrator. *Id.* § 20(a)(1)(i). And if the arbitrator decides a dispute without obtaining an FCIC interpretation, the arbitration award is nullified. *Id.* § 20(a)(1)(ii). Put simply, "only the FCIC—and not the arbitrator—may interpret the policy." *Williamson Farm*, 917 F.3d at 255. That "leave[s] very little decision[-]making authority to the arbitrator." *Id.*

As it turns out, neither the parties nor the arbitrator went through the formal process of requesting an interpretation from the FCIC. And it was not until several months after entry of the arbitration award that the FCIC determined that the handbooks *are* a part of the insurance contract. So "[n]ot only did the arbitrator violate the proscription against interpreting the contract," says Bachman Farms, but "his interpretation was wrong."[1] Petition to Nullify, R. 1, PageID 5.

Based on those contentions, Bachman Farms asked a federal district court to nullify the arbitration award under the common policy and its accompanying regulations, in a petition filed on November 19. Producers Agriculture moved to dismiss the petition for failure to state a cause of action under the FAA and for untimeliness under the FAA. It argued that parties challenging an arbitration award must abide by the FAA and its time limits. Bachman Farms responded with an argument that the common policy created an alternative remedy, with new time limits, by allowing for "judicial review of any decision rendered in arbitration" when suit is filed within one year of the arbitration award. CCIP §§ 20(c); 20(b)(3). Bachman Farms also moved to amend its petition to include a claim for vacatur under § 10 of the FAA. After oral argument, the district court denied the motion to amend as futile and dismissed the petition under the FAA. Bachman Farms timely appealed.

II.

We review both the dismissal of Bachman Farms's petition and the denial of its motion to amend de novo. *See AK Steel Corp. v. United Steelworkers of Am.*, 163 F.3d 403, 407 (6th Cir. 1998); *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (noting that while the denial of motions to amend are normally reviewed under the abuse of discretion standard, the standard is de novo when the motion is denied because "the amended pleading would not withstand a

---

[1]Producers Agriculture disagrees with both allegations. As to the first, it notes that a binding agency determination may take the form of testimony from an RMA employee, *see* 7 C.F.R. § 400.766(b)(1)(ii), and an RMA employee "testified unequivocally" at the arbitration that "the [handbooks] are '[not] part of the policy,'" Arbitration Award, R. 1-5, PageID 63 (citation omitted). And as to the second allegation, it points us to a superseding agency interpretation that agrees with the conclusion reached by the arbitrator. *See* Appellee Additional Citation, 6th Cir. R. 33. But for our purpose—determining whether the FAA bars Bachman Farms's petition—we need not address the merits of the nullification petition.

motion to dismiss"). This fresh look calls upon us to answer the same two questions the district court addressed: (1) Does the FAA apply to challenges to arbitration awards entered under the common policy? (2) If yes, does its three-month time limit for motions to vacate bar Bachman Farms's petition to nullify? We take each question in turn.

A. Does the FAA Apply?

The FAA "makes contracts to arbitrate 'valid, irrevocable, and enforceable,' so long as their subject involves 'commerce.'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 2). Neither party disputes that a federally reinsured crop insurance agreement involves commerce. Indeed, federal courts have uniformly reached that conclusion. *See, e.g.*, *Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1302 (M.D. Fla. 2010); *Nobles v. Rural Comm. Ins. Servs.*, 122 F. Supp. 2d 1290, 1299 (M.D. Ala. 2004); *In re 2000 Sugar Beet Crop Ins. Litig.*, 228 F. Supp. 2d 992, 995 (D. Minn. 2002). So by the usual measure, the FAA applies here.

But Bachman Farms suggests its agreement with Producers Agriculture is not "governed by the FAA." Appellant Br. at 21. Instead, it argues that the common policy language granting both parties "the right to judicial review of any decision rendered in arbitration" created a remedy outside the FAA. CCIP § 20(c). And it points us to an FCIC response to a public comment in which the FCIC contended that the nullification process is "a mechanism for setting aside an arbitration award that operates independently of the strictures of the FAA." Appellant Br. at 26. In its view, that independent mechanism translates to an independent *judicial* remedy, thus allowing parties an alternative cause of action with which to challenge in federal court crop-insurance arbitration awards entered against them.

Bachman Farms's briefing, however, does not address decades-old holdings that are binding here—namely, *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906 (6th Cir. 2000) and *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205 (6th Cir. 1982). "Once an arbitration is conducted under a valid arbitration contract, the FAA 'provides the *exclusive* remedy for challenging acts that taint an arbitration award.'" *Decker*, 205 F.3d at 909 (quoting *Corey*, 691 F.2d at 1211 (emphasis added)). The holdings of *Decker* and *Corey* follow from the FAA's

exclusive remedies, which are threefold. The first two—modification or correction of an award—are not relevant here. 9 U.S.C. § 11. The third, vacatur, is. The statute allows a district court to "make an order vacating the award" when one of the "exclusive" reasons of § 10 are met. *Id.* § 10; *Hall St. Assocs.*, 552 U.S. at 586.[2] A party must provide notice that it will ask a district court to vacate, modify, or correct an arbitration award "within three months after the award is filed or delivered." 9 U.S.C. § 12. And when none of those challenges to an award is successfully pursued, the FAA gives parties one year to apply for a district court order "confirming the award." *Id.* § 9.

Still, Bachman Farms claims its case is different. This agreement is private, between Bachman Farms and Producers Agriculture, but the parties did not write the terms they agreed to follow. The common policy was set by the FCIC. So should the unusual origins of this arbitration agreement give Bachman Farms an unusual, non-FAA judicial remedy to challenge the arbitration award entered against it? To answer yes, we would have to conclude that our holdings in *Decker* and *Corey* do not apply here.

But we think they do. Bachman Farms's arguments rest on its assumption that Congress gave the FCIC the authority to create a judicial remedy in *addition* to the FAA remedy we called "exclusive" in *Decker* and *Corey*. Close inspection reveals three key flaws in that assumption.

The first issue is that Congress has not changed the relevant parts of the FAA since our holdings in *Decker* and *Corey*, suggesting that the FAA's status as "the exclusive remedy" for challenging arbitration awards is unchanged as well. *Corey*, 691 F.2d at 1211. Recognizing an exception here risks ignoring binding circuit precedent—something this panel may not do. *See*

---

[2]The statute allows for vacatur in four cases:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

*Cooper v. MRM Inv. Co.*, 367 F.3d 493, 507 (6th Cir. 2004). What is more, *Decker* and *Corey* already rejected arguments very similar to those made here. In *Corey*, we determined that a suit against the administrator of an arbitration proceeding alleging that it deprived the plaintiff of a fair hearing was "no more, in substance, than an impermissible collateral attack on the [arbitration] award itself." 691 F.2d at 1211–12. The alleged "wrongdoing" fell "squarely within the scope of" a § 10 vacatur motion, so we held that the dispute could only be "resolved by timely pursuit of a remedy under th[at] section." *Id.* at 1212. And in *Decker*, we held that when the "ultimate objective" of a suit "is to rectify the alleged harm" caused by an unfavorable arbitration award, a party must "follow the proper procedure for challenging [an] arbitration award under the FAA." 205 F.3d at 910, 911. On its face, the alternative remedy proposed by Bachman Farms is exactly the kind of "collateral attack" we found "impermissible" under the FAA. *Corey*, 691 F.2d at 1212.

Another problem for Bachman Farms is the language of the Federal Crop Insurance Act. It lets the FCIC "enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business" and "issue such regulations as are necessary to carry out" the Act. 7 U.S.C. § 1506(l), (o). The agency must also "establish procedures" for "provid[ing] a final agency determination in response to an inquiry regarding the interpretation" of the Act or its accompanying regulations. *Id.* § 1506(r)(1). An agency "may invoke" a right that Congress created, *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (citation omitted), but Congressional authorization for the FCIC to craft an alternative judicial remedy to challenge arbitration awards, parallel to the FAA remedy, is nowhere to be found in the statute. So because an agency "may not create a right that Congress has not," *id.*, we will not assume that the FCIC sought to do just that by creating a new judicial remedy in the common policy.

Finally, the common policy and its accompanying regulations belie Bachman Farms's suggestion that the FCIC created an alternative judicial remedy. Recall that the "[f]ailure to obtain any required interpretation from FCIC will result in nullification of any agreement or award." CCIP § 20(a)(1)(ii); 7 C.F.R. § 400.767(b)(3)(ii)(B). All the regulations accompanying this nullification provision reveal that parties to a crop-insurance arbitration have access to

unique administrative remedies, but not a unique judicial remedy. To see why, we look to how nullification works in practice.

One opportunity for nullification arises when the parties and arbitrator never seek an FCIC interpretation during the arbitration. In those circumstances, after the conclusion of the proceedings, a "party may request [that] FCIC review the matter to determine if a final agency determination or FCIC interpretation should have been sought." 7 C.F.R. § 400.766(b)(4). The FCIC can then "automatically nullif[y]" an award if it finds that an interpretation "should have been sought and it was not." *Id.* § 400.766(b)(4)(ii)(A). Nullification might also be appropriate when a party seeks an interpretation "after the arbitration award has been rendered." RMA, U.S.D.A., *Final Agency Determination: FAD-230* (April 10, 2015). If the FCIC then issues a post-arbitration interpretation, the award must "be reviewed to determine if it is consistent with the [interpretation]. If it is not consistent, the arbitration award must be nullified if it is determined that the inconsistency materially affected the award. In that case a new award must be issued by the arbitrator applying the issued [interpretation]." *Id.*; *see also* RMA, U.S.D.A., *Final Agency Determination: FAD-232* (April 10, 2015) ("The party seeking nullification has a high burden to show that the arbitrator made an interpretation of statute, regulation, policy or procedure for which no [interpretation] was previously issued or sought.").

In either scenario outlined above, a party can appeal the FCIC's decisions to the Department of Agriculture's National Appeals Division, *see* 7 C.F.R. § 400.766(b)(4)(ii)(B); *id.* § 400.766(b)(6)(iv), and a district court can review and enforce those final determinations, *see* 7 C.F.R. § 11.13(a). Or a federal court could determine, when presented with a timely motion to vacate under § 10(a)(4) of the FAA, that an arbitration award must be vacated because the arbitrator disregarded an FCIC interpretation. *See, e.g.*, *Farmers Mut. Hail Ins. Co. of Iowa v. Miller*, No. 20-1978, 2021 WL 3044275, at *2–3 (6th Cir. July 20, 2021) (determining that an arbitration award was not "inconsistent with the agency's view"); *Williamson Farm*, 917 F.3d at 257–58 (vacating an award where an arbitrator interpreted the policy and disregarded an existing determination); *Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1285–86 (11th Cir. 2014) (confirming an award where the arbitrator did not exceed his authority because an on-point determination had issued). The upshot of this structure is clear: the FCIC can *nullify* an

arbitration award when an arbitrator fails to seek the interpretation required by the common policy and its accompanying regulations. And in a timely filed action, a federal court can *vacate* an arbitration award under § 10(a)(4) of the FAA when the arbitrator's decision conflicts with the FCIC's views.

Bachman Farms chose neither approach. It instead went directly to federal court to seek nullification under the common policy and its accompanying regulations—an administrative remedy—rather than vacatur under the FAA. Yet the FAA remains the exclusive judicial remedy available for parties challenging an arbitration award. So by failing to move for vacatur under § 10 of the FAA, Bachman Farms failed to state a claim a federal court could entertain. The district court was right to dismiss its petition for that reason.

B. Does the Three-Month Time Limit in FAA § 12 Bar the Petition to Nullify?

Not only did Bachman Farms fail to seek relief under the proper legal framework (the FAA), but proper application of the FAA reveals that even if Bachman Farms had done so, its motion still would have been untimely. Bachman Farms claims that because its nullification petition would otherwise have been timely under the FAA, the district court should have allowed amendment of the petition to include a vacatur claim. No one disputes that notice of the petition—filed nearly eight months after entry of the arbitration award—was not given within the three-month period required by § 12 of the FAA. But Bachman Farms argues that the parties agreed to extend that time limit in the common policy, which says that "suit must be filed not later than one year after the date the arbitration decision was rendered." CCIP § 20(b)(3).

That language cannot save its petition to nullify. Our analysis above applies with equal force here: If the FAA governs the parties' agreement, its time limits must apply, despite the common policy's judicial-review provisions.

In general, the FAA limits parties' ability to "contract for expanded judicial review." *Hall St. Assocs.*, 552 U.S. at 583 n.5. That partially explains why "courts have consistently interpreted the FAA notice provision to create a strict deadline." *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 368 (D.C. Cir. 2011) (cleaned up) (rejecting an attempt to use Federal Rule of Civil Procedure 6(b) to extend the deadline in § 12). And it tracks the Sixth Circuit's

rule that because the "scope of review" of an arbitration award "is limited by" the FAA, "[f]ailure to comply with th[e] statutory precondition of timely service of notice forfeits the right to judicial review of the award." *Corey*, 691 F.2d at 1212 (collecting cases).

Nevertheless, Bachman Farms reminds us that the FAA requires federal courts "to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019). We agree with that point in principle. But the rule requiring judicial enforcement of arbitration agreements does not mean that parties can agree to alter the FAA itself. Of course, parties may "specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted). And when they "unambiguously intend[] to displace the FAA with state rules of arbitration," courts must enforce that agreement. *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 715–16 (6th Cir. 2014). But in those cases, enforcing the parties' agreements meant applying, not changing, the FAA. So they lend no support to Bachman Farms's position that parties can expand the FAA by agreement. Neither does its citation to the well-accepted rule that parties can agree to *shorten* a default statute of limitations. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 107 (2013). It is equally well accepted that, unless authorized by statute, "courts do not enforce agreements made at the time of contract formation or prior to the accrual of a claim to waive, not plead, or extend the statute of limitations." 15 Arthur L. Corbin, Corbin on Contracts § 83.8 (2022).

In short, Bachman Farms has offered no authority to support the proposition that parties to the common policy can extend the three-month deadline in § 12 of the FAA for seeking vacatur.[3] Without the ability to extend that deadline, its petition must be barred by the three-month time limit in § 12 of the FAA. So the district court correctly determined that amending the petition to nullify to include a claim for vacatur under § 10 of the FAA would be futile.[4]

---

[3]In so holding, we take no position on whether the FAA's time limits are jurisdictional.

[4]Bachman Farms also argues that equitable tolling should apply to its vacatur claim. We have left open the question whether equitable tolling is available in this context. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Berry*, 92 F. App'x 243, 247 (6th Cir. 2004). But we need not answer it here because "the facts of this case clearly

III.

For those reasons, we hold that the FAA governs the arbitration agreements in federally reinsured crop-insurance policies, and we find that Bachman Farms's petition to nullify flouted its substance and procedures. We affirm the judgment of the district court.

---

do not merit equitable tolling." *Id.* Bachman Farms's failure to file a timely petition did not "unavoidably ar[i]se from circumstances beyond [its] control." *Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017) (citation omitted).